**NASHVILLE, C. & ST. L. RY. v. RAILWAY EMPLOYEES' DEPARTMENT OF AMERICAN FEDERATION OF LABOR et al.**

No. 7524.

Circuit Court of Appeals, Sixth Circuit.

Dec. 7, 1937.

William H. Swiggart, of Nashville, Tenn. (Seth M. Walker, of Nashville, Tenn., on the brief), for appellant.

Frank L. Mulholland, of Toledo, Ohio (Will R. Manier, Jr., of Nashville, Tenn., and Clarence M. Mulholland and Willard H. McEwen, both of Toledo, Ohio, on the brief), for appellees.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The Railway Labor Act, as amended June 21, 1934, U.S.C., title 45, c. 8, 45 U.S.C.A. §§ 151–158, 160–162, establishes the machinery by which collective bargaining between interstate carriers and the several crafts or classes of their employees may be carried on through freely selected representatives of both parties. Section 1, Fifth, of the act, 45 U.S.C.A. § 151(5), defines the term "employee" to include:

"Every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee or subordinate official in the orders of the Interstate Commerce Commission."

Section 2, Fourth, 45 U.S.C.A. § 152(4), provides:

"The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this Act [chapter]."

Section 2, Ninth, 45 U.S.C.A. § 152(9), provides that if any dispute arises among employees as to who are the representatives designated and authorized to act for them, it shall be the duty of the Mediation Board upon request of either party to the dispute to investigate it and to certify in writing the names of the individuals or organizations designated and authorized to represent the employees and to certify them to the carrier. It also provides:

"In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier. In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election, or may appoint a committee of three neutral persons who after hearing shall within ten days designate the employees who may participate in the election."

The appellant is an interstate carrier, subject to the provisions of the Railway Labor Act. The appellees include a group of unincorporated trade unions federated under the title "Railway Employees Department of the American Federation of Labor." A dispute having arisen between the appellees and an organization known as the Association of Shop Employees theretofore recognized by the carrier, as to which organization was entitled to represent the members of the several crafts in treating with the carrier, it was upon proper notice referred to the Mediation Board for decision. In the period October 30, 1935, to November 5, 1935, a secret ballot was taken by the Mediation Board, as a result of which the appellees were certified as having been designated and authorized to represent their several crafts in negotiation with the carrier. The latter refused to recognize the certification of the Board on the ground that the election was contrary to law, whereupon the appellees filed their bill in the court below seeking with other relief a mandatory injunction requiring the carrier to treat with the several appellees as certified by the Board, and a decree was entered granting it.

The appellant justifies its challenge to the certificate of the Board by an interest in the controversy arising out of its duty to act in good faith to all of its employees and their existing representatives, and an obligation to treat only with employee representation authorized and in fact supported by a substantial and real majority of its employees. The interest of the carrier, which translates the original dispute between rival unions into one of actual controversy between the prevailing union and the employer, is not challenged, and we see no occasion to question it.

Upon the list of those eligible to vote in the election prepared by the Mediation Board were placed the names of all employees who had performed active service for the carrier in any of the crafts or classes involved on or after June 1, 1935. This included 140 employees who were not actually working for the carrier upon the date of the election, though carried on the seniority roster subject to recall. Such men are usually referred to as "furloughed employees." In the case of each craft a majority of those eligible to vote did so, and of the vote cast in their respective crafts the appellees received a majority, though not a majority of those eligible to vote.

The election is assailed on the ground, first, that the certificate was issued upon the result of an election participated in by

persons in sufficient numbers to affect the result, who are denied the right to vote by the terms of the statute, second, that the representatives certified are the choice of but a minority of the craft since in none of the cases involved in this appeal were they selected by a majority of those entitled to vote, and, third, that the eligibility rules were changed after notice of the election, so that a court of equity ought not to lend its powers to enforce a result brought about by the Board's ex post facto change of rule, but should order a new election.

 The first ground presents the greatest difficulty. While it is generally recognized that the intent of the Congress was to clothe the Board with large discretionary powers in the conduct of elections for the appointment of representatives, Brotherhood of Railroad Trainmen v. National Mediation Board, 66 App.D.C. 375, 88 F. 2d 757; and that decisions of the Board should be final and binding upon contending groups of employees and upon the carrier, Brotherhood of Locomotive Firemen & Enginemen v. Kenan, 87 F.2d 651 (C.C. A.5), and while the general rule is that where Congress has appointed an administrative board and it·has acted within the scope of its authority, its findings are not subject to review. by the court if supported by evidence, if there is no irregularity in the proceedings and if the constitutional rights of persons adversely affected are not violated, Phillips v. Commissioner, 283 U. S. 589, 51 S.Ct. 608, 75 L.Ed. 1289, yet the Congress has here defined the term "employees" with some effort at particularity, and it becomes necessary, we think, to examine such definition with care, for while the act does not require the Mediation Board to hold an election, yet when one is held it is required to be secret, and the ballot to be taken is that of the employees involved.

The primary requirement of the statutory definition is that the term "employee" as used therein shall include every person "in the service of a carrier." The parenthetical clause adds nothing to that either by way of limitation or amplification. It but codifies the common-law rule of master and servant. Nor does the third clause shed light upon its meaning since it merely limits the kind of work that must be performed before one may be said to be an employee in the service of a carrier, and no issue as to eligibility is raised based on an erroneous classification of voters in respect to the work that they perform. We are left to a determination of what is meant by the phrase "in the service of a carrier."

On the one hand it is urged that one is in the service of a carrier when he is in an employment relationship to the carrier, and that the period of such service begins when such relationship is first established and ends only when it is finally and definitely terminated. So an agreement such as exists in the present case, whereby men who are temporarily laid off still retain seniority rights entitling them to priority in re-employment as soon as there is expansion of service, is said to preserve the employer-employee relationship, with mutual rights and obligations, until in pursuance of its terms it is finally ended. On the other hand, it is contended that one who presently performs no service, and who however he may expect to be restored to service may never again be employed, is not in service.

 The statute has not been judicially interpreted upon the point in issue, and the question is one of first impression. Having in mind, however, its beneficent purpose, the several interests of employer, employee, and public sought to be served by encouragement of peaceful settlement of labor disputes, and recognizing also that the aim of the statute is to preserve the craft as the bargaining unit rather than a lesser or greater group, we see no occasion for resort to narrow and too literal construction. The statute is in purpose, mechanism and effect, in the highest sense remedial.

Furloughed employees have been the special concern of the Congress and of administrative boards for many years. The Interstate Commerce Act of 1906, 34 Stat. 584, forbade common carriers to issue free transportation for passengers except to its employees and their families. It has been a consistent ruling on the part of the interstate Commerce Commission that an employee who is on leave of absence and is still carried on the roll of employees of the carrier is still an employee and may lawfully use such free transportation. Conference Ruling 55, Bulletin No. 7, issued November 1, 1917. In the 1920 amendment to the Interstate Commerce Act, U.S.C. title 49, § 1(7), 49 U.S.C.A. § 1(7), it was provided "that the term 'employees' as used in this paragraph shall include furloughed * * * employees." The Transportation Act of 1920 used the

term "employees" without definition, but the Railroad Labor Board thereby created held it in repeated decisions to comprehend all "laid off or furloughed employees entitled to return to the service under the seniority rule when the force is restored to what is generally recognized as constituting a normal force." [1]

The appellants direct attention to Railroad Retirement Board v. Alton Railroad Co., 295 U.S. 330, 55 S.Ct. 758, 79 L.Ed. 1468, holding invalid the original Railroad Retirement Act of 1934, chapter 868, 48 Stat. 1283, 45 U.S.C.A. §§ 201–214. That act purported to make eligible for pensions all who were in carrier service within one year prior to its passage irrespective of future re-employment, and it was held to be arbitrary to place upon carriers the burden of gratuities to thousands who for various reasons had been separated from the service and might never be re-employed. But this does not reach the point involved, nor does it define employees as excluding furloughed men with seniority rights preserved by contract for the clause there involved was broad enough to include those dismissed for cause or otherwise permanently severed from their employment. The Retirement Act of 1935, chapter 812, 49 Stat. 968, § 1, 45 U.S.C.A. § 215, defines "employees" as persons "in the service of a carrier," and adds persons "in the employment relation to a carrier." These phrases are again defined, the first to mean one who "may be subject to [the carrier's] continuing authority to supervise and direct the manner of rendition of his service," and the other to include those "furloughed or on leave of absence, and subject to call for service and ready and willing to serve." It seems clear enough, however, that the more limited provision in the later Railroad Retirement Act had for its purpose escape from the constitutional infirmity of the earlier statute. In any event we know of no rule of statutory construction which requires two acts relating to separate and distinct subjects to be read in pari materia, even though they affect the same general class of persons.

Finally, when there is doubt, the intent of the Congress must, under familiar rules, be ascertained from the language of the enactment as a whole. Elsewhere in the Railway Labor Act, notably in section 6, 45 U.S.C.A. § 156, the statute provides for conferences between representatives of "the parties interested in such intended changes." Those who by agreement retain their seniority rights, which entitle them to preference in reinstatement, and by such agreement not only possess rights but are subject also to obligations, have not only a future but a present interest in all negotiations which affect the hours of labor, rates of pay and working conditions governing the craft in which they have long been schooled and disciplined. Outside their craft they would fall generally into the ranks of the unskilled, and as we have seen, the craft and not a more temporary group is the statutory unit for negotiation. The very emphasis laid by the appellant upon the conflicting interests in an election between those presently working and those temporarily suspended but serves to demonstrate this present interest, and it is not without importance in this connection that the furloughed men whose votes in the election were challenged were all back at work when the case was tried below.

Of the contention that the Mediation Board violated the terms of the statute by certifying as representatives those chosen by a majority of those voting rather than by a majority of those entitled to vote little need be said. It is, we think, almost universal practice when society endeavors to express its collective will to ascertain it by a majority of votes cast, unless it has restrained itself by other standards, and in the absence of other restraint, a majority of those entitled to participate is the quorum that validates its choice. In any event the courts have uniformly so held in respect to choice under the present statute. Virginian Railway Co. v. System Federation Railway Employees, etc., 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, affirming 84 F.2d 641 (C.C.A.4), in turn affirming (D.C.) 11 F.Supp. 621; Association of Clerical Employees v. Brotherhood of Railway & Steamship Clerks, 85 F.2d 152, 109 A.L.R. 345 (C.C.A.7). This is on the assumption reasonably entertained that eligible voters

---

[1] Railway Employees' Department, A. F. of L. v. Pennsylvania System, Decision 218, Docket 404, Vol. II, 212, Railroad Labor Decisions; International Association of Railroad Supervisors of Mechanics v. Chicago, Rock Island & Pacific Ry. Co., Decision 419, Docket 770, Vol. II, 416, Railway Labor Board Decisions; United Brotherhood & Railway Shop Laborers v. Long Island Railroad Co., Decision 418, Docket 763, Vol. II, 412, Railway Labor Board Decisions.

not participating in an election assent to the will of the majority therein expressed rather than on the inference not so reasonable than when change is proposed those not participating are content to abide the status quo.

We find no merit in the contention that the injunction should be set aside because the Board altered its ruling as to eligibility after notice of election. The Board is by statute vested with great discretion in determining eligibility, and must be conceded to have the power to alter or interpret its own rules. The change in the eligibility rule was undoubtedly in response to judicial interpretation of the statutory provision. There was no estoppel, and whether any employees refrained from voting who would have exercised the franchise had the notice of election in the first instance informed them of the rule finally adopted rests entirely within the realms of speculation unsupported by proofs. Association of Clerical Employees, etc. v. Brotherhood of Railway & S. S. Clerks, supra.

The decree is affirmed.