Lloyd Lee NELSON, Appellant,

v.

PIEDMONT AVIATION, INC., Appellee.

Lloyd Lee NELSON, Appellee,

v.

PIEDMONT AVIATION, INC., Appellant.

Nos. 84–1187, 84–1190.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 1, 1984.

Decided Dec. 28, 1984.

Robert F. Gore, Shallotte, N.C. (Rex H. Reed, Springfield, Va., Hamilton Horton, Horton, Hendrick & Kummer, Winston-Salem, N.C., on brief), for appellant.

W.T. Covington, Jr., Charlotte, N.C. (Wayne Huckel, Kennedy, Covington, Lobdell & Hickman, Charlotte, N.C., on brief), for appellee.

Before ERVIN and WILKINSON, Circuit Judges, and MICHAEL, United States District Judge for the Western District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

Appellant raises the question of whether an applicant for employment is an "employee" under the Railway Labor Act. The District Court for the Middle District of North Carolina held that he is not. Thus, Piedmont Aviation's alleged refusal to hire appellant because of present non-union membership and past non-union activities did not violate the RLA because that statute imposes no such restrictions on the right of a carrier to select its own employees.

Appellant points to nothing in the statutory language or legislative history of the Railway Labor Act to support his claim to its protection. He refers us to not a single case where a court has interpreted the term "employee" so expansively. Instead, he candidly invites us to participate in a creative exercise in statutory redraftsmanship. We decline that invitation and affirm the decision of the district court.

## I

Appellant Lloyd Lee Nelson flew as a replacement pilot for Wien Air Alaska ("Wien") during a two-year period when the Air Line Pilots Association ("ALPA") was on strike against Wien. Subsequently, appellant sought employment with other American airlines, including appellee Piedmont Aviation, Inc. ("Piedmont"). He was granted an interview by Piedmont but was allegedly denied employment because the airline feared delays and maintenance problems if it hired a Wien replacement pilot. Appellant finally found a position in Saudi Arabia, far from his home and family. He filed this action against Piedmont under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* (1982), seeking damages and injunctive relief. The district court dismissed the action for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted.

## II

■ Nothing in the statutory language or the legislative history of the RLA (which extends to common carriers by air, 45 U.S.C. § 181) supports appellant's contention that applicants for employment are covered. The purpose of the statute is to establish the mechanics for collective bargaining between interstate carriers and their employees through freely selected representatives of both parties, *Nashville, C. &. St. L. Ry. v. Railway Employees Dept.,* 93 F.2d 340 (6th Cir.1937), *cert. denied,* 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110 (1938); *see also Virginia Ry. Co. v. System Federation No. 40,* 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937). The statute defines an "employee" in clear language:

> The term "employee" as used herein includes every person *in the service of a carrier* (subject to its continuing authority to supervise and direct the manner of rendition of his service) *who performs any work* defined as that of an employee or subordinate in the orders of the Inter-

state Commerce Commission ... 45 U.S.C. § 151 Fifth (emphasis added).

■ In construing a statute, we must begin with the ordinary meaning of the words used and, absent a clearly expressed legislative intent to the contrary, regard the language as conclusive. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982); *see also United States v. American Trucking Ass'ns, Inc.,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). Here the statutory language does not admit of doubt. At the time of his application to Piedmont, appellant was not "in the service of a carrier" and did not "perform any work" for an airline as specified by 45 U.S.C. § 151 Fifth. *See Nashville, C. &. St. L. Ry. v. Railway Employees Dept.,* 93 F.2d 340 (6th Cir.1937), *cert. denied,* 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110 (1938). Therefore, appellant was plainly not subject to the protections of 45 U.S.C. § 152 Fourth, prohibiting an employer from interfering with an employee's free choice of whether or not to join a labor organization. The only section of the RLA that deals with prospective employees is 45 U.S.C. § 152 Fifth, prohibiting a carrier from requiring a person seeking employment to sign any agreement promising to join or not to join a labor organization. The presence of this section demonstrates Congress' ability to cover prospective employees when it wishes, and appellant makes no claim that Piedmont attempted to extract any promises from him in violation of this provision.

There are 1,381 pages of legislative history pertaining to the Railway Labor Act and its several amendments. Not one considers the possibility of extending coverage to discrimination in the hiring of employees.[1]

No case supports appellant's arguments. The two cases relied on by him are inapposite. *United States v. American Trucking Ass'ns,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), does indeed stand for the proposition that "employee" is not a word of art, and, in statutes lacking particular-

---

**1.** Subcommittee on Labor of the Committee on Labor and Public Welfare, U.S. Senate, *Legisla-* *tive History of the Railway Labor Act, as Amended (1926 through 1966)* (1974).

ized definition, it is not regarded by the courts as a word of definite content. However, where the term "employee" *does* receive a particularized definition, the clear language of that definition must govern. *Nashville, C. & St. L. Ry. v. Railway Employees Department*, 93 F.2d 340 (6th Cir.1937), *cert. denied*, 303 U.S. 649, 58 S.Ct. 746, 82 L.Ed. 1110 (1938), also cited by appellant, does not expand the meaning of "employee" under the RLA; there the court speaks of the "particularity" with which Congress defined the term and proceeds to construe the phrase "in the service of a carrier" to include furloughed employees who have an obligation to return to work when called. *Id.* at 342. Such persons are different from those, such as appellant, who have never been in the employ of the carrier.

The statutes with which appellant compares the RLA are likewise inapposite because in each case Congress made clear its intent to cover applicants for employment by specific language referring to discrimination in hiring. *See* National Labor Relations Act, § 8(a), 29 U.S.C. § 158(a) (1982);[2] Federal Labor-Management and Employee Relations Act § 701, 5 U.S.C. § 7116(a) (1982). The difference in wording between those statutes and the RLA makes clear the more limited nature of the latter's coverage. While the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, § 158(a) (1982), and the Federal Labor-Management and Employee Relations Act, 5 U.S.C. § 7101 *et seq.*, § 7116(a) (1982), protect prospective employees in their spheres of coverage, the RLA does not.

In some cases, the Supreme Court in interpreting the Railway Labor Act has borrowed from the NLRA or from general labor policy. *See, e.g., Electrical Workers v. Foust*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.*, 394 U.S. 369, 89 S.Ct. 1109, 22 L.Ed.2d 344 (1969); *Steele v. Louisville & N.R. Co.*,

323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). These cases, however, did not involve a conflict with the plain language of the RLA. Most recently, the Court's disallowance of punitive damages in unfair representation suits under the RLA, a ruling drawing on NLRA principles, did not conflict with any wording of the Railway Labor Act, *Electrical Workers v. Foust, supra*. Indeed, the Court has emphasized that "the National Labor Relations Act cannot be imported wholesale into the railway labor area" and that "[e]ven rough analogies must be drawn circumspectly," *Brotherhood of Railroad Trainmen, supra*, 394 U.S. 369, 383, 89 S.Ct. 1109, 1118, 22 L.Ed.2d 344, an admonition that may permit borrowing in resolving statutory ambiguity but proscribes it where one statute contains a plain provision that the other does not.

We appreciate the fact that appellant's case may not be without equities. He alleges retaliation as a result of his legally conducted activities in flying for an airline engaged in a sharp labor dispute with the Air Line Pilots Association. However, Piedmont has done nothing to violate the RLA in refusing to hire appellant. We decline to tell a party relying on the plain meaning of legislation that the statute says something it does not. It is with the Congress, not the courts, that appellant must press his case for statutory similarity. The policy expressed by Congress in other labor statutes with respect to non-discriminatory hiring is important in permitting workers to join or not to join unions without fear of compromising their future employment prospects. However salutary that policy may be, it is not expressed in the Railway Labor Act.

### III

On cross-appeal, Piedmont urges us to award costs and attorney's fees against the National Right to Work Legal Defense Foundation, which prosecuted appellant's case. The district court found there was

---

**2.** The National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, specifically excludes from its coverage employers subject to the RLA. 29 U.S.C. § 152(2).

insufficient evidence to declare appellant's claim to be totally frivolous, unreasonable, or groundless under any statutory authority or to rule that the action was filed in "bad faith" under Federal Rule of Civil Procedure 11. We affirm.

Attorney's fees may be awarded against a losing party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975), a criterion that has come to be known as the "bad faith exception," and that may be applied to counsel as well as to litigants. *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 756, 100 S.Ct. 2455, 2459, 65 L.Ed.2d 488 (1980). Appellant and his counsel were relying upon anti-discrimination provisions in hiring in other labor laws that were not dissimilar in purpose and scope to the RLA. Thus we cannot say the analogies were drawn with no "good faith argument for the extension, modification, or reversal of existing law." *Textor v. Bd. of Regents of North Ill. University,* 87 F.R.D. 751, 754 (N.D.Ill.1980), *citing* DR 7–102(A)(2) of the Code of Professional Responsibility. This language has been incorporated into the 1983 amendment to Rule 11. While the amendment seeks to "reduce the reluctance of courts to impose sanctions" for abuse of process,[3] we believe that the district court in this case, which was able to judge first hand counsel's conduct in the course of the action, should be accorded deference in its judgment. *See Nemeroff v. Abelson,* 704 F.2d 652, 656 (2d Cir.1983).

We also decline to award Piedmont damages or costs under the "frivolous appeal" provision of Rule 38 of the Federal Rules of Appellate Procedure.[4] The single issue posed by appellant was one of statutory construction. As noted, the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (1982), and the Federal Labor-Management and Employee Relations Act, 5 U.S.C. § 7101 *et seq.* (1982) both contain clauses prohibiting discrimination in hiring based upon choices or activities relating to union membership. Appellant's attempt to extend the coverage of the RLA by analogy to these statutes was not frivolous in a case of first impression.

The judgment of the district court is AFFIRMED.

---

**3.** J. Moore, *Federal Practice* § 11.01[4], citing Fed.R.Civ.P. advisory committee note (1984).

**4.** FRAP 38 provides: "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."