Art STEVENS (now Burl Tylor) et al., Plaintiffs,

v.

TEAMSTERS LOCAL 2707, AIRLINE, AEROSPACE AND ALLIED EMPLOYEES, Defendant.

No. C78–495.

United States District Court,
W. D. Washington.

Nov. 24, 1980.

Robert C. Randolph of MacDonald, Hoague & Bayless, Seattle, Wash., for plaintiffs.

Herman L. Wacker of Vance, Davies, Roberts, Reid & Anderson, Seattle, Wash., for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

VOORHEES, District Judge.

Having considered the cross-motions of the parties for summary judgment, along with the voluminous memoranda and affidavits submitted by counsel, the Court now finds and rules as follows:

1. This action involves claims by three airline employees that their union breached its duty of fair representation by unilaterally withdrawing their grievances without notice to the employees, thereby foreclosing the latter from pursuing their claims individually. As airline employees, the plaintiffs fall under the ambit of the Railway Labor Act, Title 45 U.S.C. §§ 151–188. The Act, which originally applied only to railroad employees, was in large part made applicable to airline employees in 1936. *See* Title 45 U.S.C. § 181.

■ 2. Grievance procedures under the Act differ somewhat from those under the National Labor Relations Act. *Slagley v. Illinois Central R.R. Co.*, 397 F.2d 546 (7th Cir. 1968). In particular, various provisions of the Act, including § 153 First (i) and (j), have been interpreted to grant employees the statutory right individually to process or otherwise participate in the processing of their grievances. *Elgin, J. & E. Rwy. Co. v. Burley*, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945) (*Burley I*), adhered to on rehearing, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946) (*Burley II*). However, whether airline employees have the same statutory right individually to process their grievances is less clear, because the section which specifically permits employees individually to submit their grievances to boards of adjustment does not apply to airline employees. *See* § 153 First (j), § 182. The Court is nonetheless of the opinion that airline employees covered by the Act have a statutory right to process their grievances individually.

3. It is clear that the general aim of Congress in extending the Act to air carriers "was to extend ... the same benefits and obligations available and applicable in the railroad industry." *International Ass'n of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963). *See Hunt v. Northwest Airlines, Inc.*, 600 F.2d 176 (8th Cir. 1979). Furthermore, various provisions of the Act which are applicable to the air carrier industry make it clear that individual employees are to have a substantial role in the grievance process. Section 152 First requires "employees" to exert every reasonable effort to "settle all disputes." *Burley I* interpreted § 152 Fourth as encompassing the right of the individual employee to confer with his employer regarding his grievance. 325 U.S. at 735, 65 S.Ct. at 1295. *Burley I* also read the term "representative" in §§ 152 Second, Third, and Sixth to include the employee himself. *Id.* at 734–36, 65 S.Ct. at 1295–96. These provisions relate to the early stages of the grievance procedure.

4. The Court is further of the opinion that § 153 was made inapplicable to the airline industry not because Congress felt the procedures of railroad arbitration inappropriate to the airline industry, but because Congress contemplated a Board of Adjustment for the airline industry distinct from the National Railroad Adjustment Board established by that section. *See* § 185. Section 184, which requires the parties to establish System Boards of Adjustment, provides that disputes which have not been resolved in the lower levels of grievance proceedings may be "referred by petition of the parties or by either party" to the System Board. Given the rights of the individual employees to participate at the initial levels of the grievance procedure, individual employees in some situations will be "parties" entitled to submit matters to the System Board. Thus, the Court concludes that airline industry employees have the same right individually to process grievances as do railroad industry employees.

5. Even if this were not the case, the Court notes that the parties have agreed that individual employees have the right to process grievances under the terms of the collective bargaining agreement. *See* §§ 21(b)(1) and 22 of the collective bargaining agreement.

6. The question then becomes whether the union, by withdrawing plaintiffs' grievances and foreclosing plaintiffs' right individually to process their grievances, has breached its duty of fair representation to plaintiffs.

■ 7. The recent case of *Robesky v. Quantas Empire Airways, Ltd.*, 573 F.2d

1082 (9th Cir. 1978) is instructive. *Robesky* reemphasized that a breach of the duty of fair representation need not arise from malicious or discriminatory conduct. A breach of that duty may also arise out of arbitrary conduct by the union. Such arbitrary conduct may take two forms:

a. Conduct which lacks a rational basis; or

b. Egregious conduct reflecting a reckless disregard of the rights of the employee. *Id.* at 1088–90. In order to establish that union conduct was egregious, the employee must show that the conduct reflected a reckless disregard of the rights of the employee, that it severely prejudiced the employee, and that the policies behind the duty of fair representation would not be served by shielding the union from liability. *Id.*

■ 8. Defendant contends that it did not breach its duty of fair representation because it was authorized to process the grievance in such manner as the union viewed to be in the best interests of the union. *See* Article XIV, § 3, of Teamsters Constitution, quoted below. The relevant standard for authorization is set forth in *Burley I*, and was stated two ways:

[Whether there has been shown an] unequivocal intention to surrender the individual's right to participate in the settlement and to give the union final voice in making it together with exclusive power to represent him before the board. 325 U.S. at 744, 65 S.Ct. at 1299.

[Whether] the employees had finally committed the whole matter of their claims into the union's hands in such manner as to constitute a surrender of their individual rights to concur in any agreement of settlement. *Id.* at 747, 65 S.Ct. at 1301.

The Court noted that such an authorization could not be inferred "merely from the fact that the union participated in negotiations with the carrier" nor from "the mere making of complaints through local [union] officials." This high standard of proof of authorization stems from a number of considerations. First, the right of individual employees to process their own grievances is statutory in nature and should not be lightly abrogated. Second, any authorization by the employee need not be a total one. *Id.* at 747 n. 43, 65 S.Ct. at 1301. For instance, an employee may delegate his power to negotiate with the employer but retain his right to disavow any settlement therein achieved. Third, although a union will generally process any grievance at the initial stages, it becomes increasingly expensive for the union to carry the grievance to higher levels. Where the union and the employee disagree as to the merits of the grievance, there will be increasing pressure upon the union either to settle or withdraw the grievance. By contrast, if the employee views the grievance as being meritorious, he may be determined to pursue his grievance through to arbitration. Because of this potential conflict of interest between employee and union, it is important that any authorization to the union be clear and specific.

■ 9. Applying this standard, the Court finds that the defendant has failed to show that it was authorized to withdraw the grievances of plaintiffs. The only hint of an authorization appears in the following words of the Constitution of the International Brotherhood of Teamsters, Art. XIV, § 3:

Every member, by virtue of his membership ... authorizes his Local Union to ... act for him and have final authority in presenting, processing and adjusting any grievance....

This provision is, however, in conflict with the collective bargaining agreement, which provides that employees may individually process their grievances. § 21(b)(1). Second, the words "processing" and "adjusting" contemplate negotiation and a *quid pro quo* settlement. In its present case the grievances were simply withdrawn without any benefit accruing to the plaintiffs. Third, by their very act of filing the grievances, plaintiffs indicated that they felt their grievances had merit. Where an employee has indicated his belief that his grievance has merit, the Court cannot find, on the basis of Article XIV, § 3, an un-

equivocal intention on the part of the employee to permit the union to settle the matter upon whatever terms were acceptable to it alone. That these employees vehemently protested the withdrawal of their grievances indicates that they neither contemplated nor acceded in the action taken by the union. Plaintiffs were given no warning that the drastic step of withdrawal would be taken, were not consulted as to their views, and were not given the opportunity to take over the processing of their grievances.

■ 10. The Court holds, therefore, that before the defendant union might withdraw a grievance without receiving anything for the employee in return, it must give notice to the employee of its intention to do so. The question then becomes whether the failure to do so constitutes a breach of the defendant's statutory duty of fair representation. The Court finds that it does under both the tests of *Robesky.*

11. The union argues that withdrawal of the grievances was not arbitrary because it viewed the grievances as meritless. But plaintiffs' complaint is not that the union improperly viewed the grievances as meritless but rather that the union withdrew the grievances without, according to plaintiffs, their statutory right individually to process those grievances. *See Robesky, supra,* 1085, 1089 n. 14. There has been no reason advanced by the union for its failure to notify plaintiffs prior to the withdrawal of the grievances. The Court concludes that the withdrawal of the grievances without prior notice lacked any rational basis and was arbitrary. Turning to the egregious conduct test, the Court finds that the withdrawal was in reckless disregard of the statutory rights of the plaintiffs to pursue their own grievances, that the foreclosing of the rights of plaintiffs with respect to the grievances severely prejudiced them, and that the policies behind the duty of fair representation would not be harmed by imposing liability in this case. Requiring the giving of prior notice of an intention to withdraw a grievance would not increase the union's expenses, would not harm its bargaining position, would not prejudice the interests of other employees, and, contrary to the position of the union, would not require it to pursue what it viewed as meritless grievances.

■ 12. Defendant contends that plaintiffs must at this stage demonstrate the validity of their grievances in order to recover, citing *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The Court notes that *Hines* was an action against the employer on the underlying grievance. This case, on the other hand, does not directly involve the validity or invalidity of the grievance but rather whether the union was required to give notice before it withdrew the grievance. As the *Robesky* Court noted,

A less-than-ironclad grievance may be settled. . . . As will be seen, the manner in which the Union handled the settlement may require that [the employee] be afforded a remedy against the Union.

*Robesky, supra,* at 1085. At this point in the case, the claims of the plaintiffs for lost compensation have been dismissed. *See* Order of September 17, 1979. Thus, in order to establish liability, the plaintiffs are not required to establish the "ironclad" validity of their grievances.

Accordingly, the motion for summary judgment of liability on the part of plaintiffs is GRANTED. The motion of defendant is DENIED.

The Clerk of this Court is instructed to send uncertified copies of this order to all counsel of record.