Paul J. PYLES, Plaintiff–Appellant,

v.

UNITED AIR LINES, INC., a Delaware Corporation, Defendant–Appellee.

No. 93–4920.

United States Court of Appeals, Eleventh Circuit.

March 20, 1996.

F. Lee Bailey, Bailey, Fishman, Freeman & Ferrin, West Palm Beach, FL, for appellant.

Peter W. Zinober, Zinober & McCrea, P.A., Tampa, FL, Charles A. Powell, IV and Robert A. Siegel, O'Melveny & Myers, Los Angeles, California, for appellee.

Before TJOFLAT, Chief Judge, COX, Circuit Judge, and DYER, Senior Circuit Judge.

TJOFLAT, Chief Judge:

Appellant Paul J. Pyles, a former Pan American Airlines pilot, appeals the district court's dismissal of his case against United Airlines. The district court dismissed the case on the grounds that appellant's claims are preempted by both the Railway Labor Act ("RLA"), ch. 347, 44 Stat. 577 (1926), 45 U.S.C. §§ 151 *et seq.* (1988), and the Federal Aviation Act ("FAA"), Pub.L. 85–726, 72 Stat. 731 (1958) (repealed by Pub.L. No. 103–272, § 7(b), 108 Stat. 745, 1379, 1383 (1994), and replaced by provisions of 49 U.S.C.A. §§ 40101–49105 (West 1995)). We affirm.

## I.

On October 23, 1990, United and Pan Am entered into an agreement in principle whereby Pan Am would sell to United, in a two-phase transaction, the following: first, two of its Boeing 747 aircraft and some ground facilities, and second, some of its European routes and equipment used to service those routes. A final agreement for the transaction (the "Phase Two Agreement") was signed on November 14, 1990. To address concerns over potential job losses at Pan Am as a consequence of the route and aircraft sale, the Phase Two Agreement provided that:

> [United] shall exercise its best efforts to take a reasonable number of qualified and current B747 flight crew members from [Pan Am's] seniority list following the Interim Closing or the Closing, as the case may be. [United] will utilize its *normal hiring procedures and standards,* and will consider employing only flight crew members who are currently flying the European operation, determined by [United] to be pilot-qualified, and *pass [United's] flight medical examination.*

Phase Two Agreement § 5.9(g) (emphasis added).

The Air Line Pilots Association ("ALPA") maintained a local at both United (the "UAL–ALPA") and Pan Am (the "PAA–ALPA"), and represented pilots of each airline in collective-bargaining negotiations. The agreement called for UAL–ALPA and PAA–ALPA to negotiate and then provide United, by December 1, 1990, with an agreed number of Pan Am crews to be transferred to United. Phase Two Agreement § 5.9(g)(ii).[1] Failure to do so would result in United's being free from any obligation to hire any Pan Am crews. Unable to reach an agreement, the union locals were subsequently sent to arbitration pursuant to a resolution passed by the Executive Committee of ALPA International.[2] On February 8, 1991, the arbitrator rendered his decision, reduced to a written award on March 27, which concluded that forty-two Pan Am 747 flight crew members should be transferred to United.

While these events transpired, United entered into negotiations with ALPA. On February 4, 1991, they entered an agreement (the "letter of agreement") that established a framework for the impending crew transfers. The letter of agreement discussed the general manner in which integration of the Pan Am crews into United operations would proceed, the benefits and compensation the transferred crews would be entitled to receive, and the selection criteria for transfer. In addition, the agreement admonished that transferring crews would have to "pass a United pilot physical examination" and "otherwise satisfy all of United's normal pilot hiring criteria." Letter of Agreement, Attachment A.

Appellant's seniority was such that he qualified to be among the group slated for transfer to United. He therefore submitted to United's physical examination on April 1, 1991. Pyles claims he was told that he failed this physical examination because radial keratotomy surgery had been performed on his

---

1. UAL–ALPA and PAA–ALPA were also responsible for reaching an agreement by December 1, 1990, which provided for name and seniority integration of the transferred pilots as well as "other contractual matters deemed by [United] necessary to render offers of employment operationally viable." Phase Two Agreement § 5.9(g)(iii).

2. The resolution also requested that United extend its deadline for submission of proposed transfers for a reasonable time in light of the arbitration.

eyes in 1986. On that basis, he alleges that United refused to hire him and officially denied him employment on April 8. Having been denied a job, Pyles brought this action in the district court.

Pyles had three state-law claims pending in the district court when the order dismissing the case was entered on July 21, 1993.[3] His first claim was for breach of the route purchase agreements between Pan American and United. The second alleged breach of the letter of agreement between United and UAL–ALPA. Pyles claimed to be a third-party beneficiary to these agreements. Pyles' final claim alleged that United tortiously interfered with the business relationship between Pyles and Pan Am.

## II.

■ We consider first appellant's first and third counts. Section 11.5 of the Phase Two Agreement, entitled "No Third Party Beneficiary," states that

[n]othing herein expressed or implied is intended to or shall be construed to confer upon or give to any person or corporation other than the parties hereto and their successors or permitted assigns any rights or remedies under or by reason of this agreement.

Phase Two Agreement § 11.5. Because he is not a party to the agreement and because the agreement specifically precludes third-party beneficiaries, appellant has failed to state a claim in his first count. *See* Fed.R.Civ.P. 12(b)(6).

■ Appellant's third count, for tortious interference, likewise fails to state a claim. The complaint lacks a sufficient factual predicate to substantiate how United tortiously interfered with Pyles' business relationship with Pan Am. Under Florida law, Pyles must prove the following in order to recover for tortious interference with a business relationship:

1. the existence of a business relationship under which Pyles has legal rights;

2. knowledge by United of such relationship;

3. an intentional and unjustified interference with the relationship by United; and

4. damage to Pyles.

*See Babbit Elecs., Inc. v. Dynascan Corp.,* 38 F.3d 1161, 1177 (11th Cir.1994) (per curiam). Pyles has failed to state a claim because he has pled nothing which would satisfy the third and fourth elements. Pyles does not allege any affirmative act on the part of United that interfered with his relationship with Pan Am. When United denied him employment, it in no way affected Pyles' relationship with Pan Am; Pyles returned to work at Pan Am with his former status and benefits intact. The record is devoid of any allegations to the contrary. Given those facts, it is also impossible for Pyles to show that he has suffered any damage. Construing the pleaded facts and inferences arising therefrom as true, we find that Pyles can prove no set of facts that would entitle him to relief. *See Welch v. Laney,* 57 F.3d 1004, 1008 (11th Cir.1995); *Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied,* 507 U.S. 987, 113 S.Ct. 1586, 123 L.Ed.2d 153 (1993). We therefore dismiss count three for failure to state a claim.[4] *See* Fed.R.Civ.P. 12(b)(6).

## III.

■ Most of the provisions of the RLA apply to labor relations in the airline industry. *See* 45 U.S.C. § 181. The RLA has established a framework for the resolution of disputes between air carriers and their employees that "grow[ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 184. The distinguishing feature of such a dispute, termed a "minor dispute," is that "the dispute may be conclusively resolved by interpreting the existing [collective-bargaining] agreement." *Consolidated Rail Corp. v.*

---

**3.** A fourth count, for tortious interference with a business relationship between Pyles and ALPA, was dropped.

**4.** Because we dismiss Pyles' first and third counts pursuant to Rule 12(b)(6), we need not decide whether these claims are also preempted by the RLA and FAA.

*Railway Labor Executives' Ass'n,* 491 U.S. 299, 305, 109 S.Ct. 2477, 2482, 105 L.Ed.2d 250 (1989). Congress intended that these "minor disputes" be resolved through the grievance procedures of the RLA rather than in federal court. *See Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 94, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978). Therefore, it has long been the rule that when the resolution of a state-law claim, such as the breach of contract claim here, requires an interpretation of the CBA, the claim is preempted and must be submitted to arbitration before a system board of adjustment. *See Andrews v. Louisville & N.R.R.,* 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972).

■ The Supreme Court recently revisited its standard for preemption of claims by the RLA in *Hawaiian Airlines, Inc. v. Norris,* —— U.S. ——, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In so doing, the Court adopted the preemption standard applied in cases under the Labor Management Relations Act ("LMRA"). *Id.* at ——, 114 S.Ct. at 2249; *see Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The LMRA standard narrows the otherwise broad preemptive scope of the RLA by precluding preemption of state-law claims that enforce rights independent of a CBA. *See Hawaiian Airlines,* —— U.S. at ——, 114 S.Ct. at 2246–48. The fact that *reference* to a CBA may be required, particularly where factual issues are involved, is insufficient of itself to preempt an independent state-law claim; only where *interpretation* of a CBA is required will the claim be preempted. *See id.* at ——, 114 S.Ct. at 2251. In *Hawaiian Airlines,* the Court applied the narrow standard and concluded that the RLA did not preempt a state tort cause of action for wrongful discharge in violation of protections embodied in a state whistle-blower protection act. *Id.* at ——, 114 S.Ct. at 2251.

■ Applying the standard set forth in *Hawaiian Airlines,* we find appellant's second claim, alleging breach of the letter of agreement between United and UAL–ALPA, preempted by the Railway Labor Act.[5] The letter, in its first paragraph, indicates that it is "entered into in accordance with the provisions of the Railway Labor Act." Moreover, it is, by its terms, a modification of the collective-bargaining agreement ("CBA") between United and its employees; to interpret the letter is thus to interpret a portion of the CBA.[6] Appellant's second claim asserts no rights that are independent from the CBA. His claim is rooted in the CBA itself and the alleged breach thereof. Because the CBA is the only potential source of *any* rights he may have to employment with United, one must interpret the CBA to determine what those rights are.

Appellant nonetheless attempts to elude preemption by maintaining that his case falls outside the coverage of the RLA because he was never employed by United. The term "employee," as defined in the RLA, includes "every person in the service of a carrier (subject to its continuing authority to supervise and direct the manner of rendition of his service) who performs any work defined as that of an employee." 45 U.S.C. § 151, par. Fifth. It is undisputed that Pyles was an employee of Pan Am prior to the route and crew transfers and continued, albeit only for a short time, to be employed by Pan Am thereafter. Appellant contends, however, that the RLA is inapplicable and does not bar his claim because he was never an employee of United. We disagree.

In construing the term "employee," we first look to the plain meaning of the provision. Pyles never "perform[ed] any work defined as that of an employee" for United and was certainly never subject to United's supervisory authority. Therefore, upon a cursory review, the language appears to support appellant's position. *See Air Line Pilots Assoc. v. United Air Lines, Inc.,* 802

---

5. Because we decide that this claim is preempted by the RLA, we need not reach the issue of FAA preemption.

6. One must also interpret other provisions of the CBA in order to interpret properly the letter of agreement. For instance, Attachment A of the letter of agreement uses terminology such as "United's normal pilot hiring criteria." To discern what those criteria are, one must interpret the CBA, which governs United's hiring procedures.

F.2d 886, 913 (7th Cir.1986), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987) ("[U]nless a person has performed services for the employer under that employer's supervision he is not an employee for purposes of the RLA."). Pyles, however, is clearly someone who performed services as an employee for "a carrier"—Pan Am. The question then is whether the statutory definition of employee means that the RLA applies when an employee of one airline has a dispute with another airline. The text of the statute provides no answer to this question, so we turn to congressional intent to aid our interpretation.

To ascertain the intent behind a definitional provision that applies throughout the RLA, we look to the substance of the Act as a whole. Section 151a of the RLA indicates that a central purpose of the RLA is "to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of [CBA] agreements." 45 U.S.C. § 151a. A primary justification for the establishment of grievance machinery is the desire of Congress to have labor agreements interpreted in a uniform manner. *See Pennsylvania R.R. v. Day,* 360 U.S. 548, 551, 79 S.Ct. 1322, 1324, 3 L.Ed.2d 1422 (1959) ("*Day* "); *cf. Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776,* 346 U.S. 485, 490–91, 74 S.Ct. 161, 165–66, 98 L.Ed. 228 (1953). In addition, compulsory arbitration ensures that disputes are resolved by experts in "the common law of [the] particular industry." *Consolidated Rail Corp.,* 491 U.S. at 310–11, 109 S.Ct. at 2484 (quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960)); *Day,* 360 U.S. at 553, 79 S.Ct. at 1325. We believe that requiring Pyles to arbitrate his claims against United furthers this congressional mandate. Mergers are becoming an increasingly common phenomenon in the airline industry; as they increase, so will the need for uniformity in the treatment given to those for whom a transfer is negotiated. The need for expert evaluation with regard to the rights of these employees is also apparent.[7]

Our belief is reinforced when we examine the factual context from which this case arose. To support his position, appellant relies on *Nelson v. Piedmont Aviation, Inc.,* 750 F.2d 1234, 1236–37 (4th Cir.), *cert. denied,* 471 U.S. 1116, 105 S.Ct. 2358, 86 L.Ed.2d 259 (1984), a case where the plaintiff's claims were not preempted by the RLA because he was merely an applicant for employment with the airline. We find *Nelson* inapposite. *Nelson* is distinguishable because Pyles was not a mere applicant for employment off the street but rather was employed by an air carrier both prior to and subsequent to the route purchase transaction. More importantly, it was by virtue of his position with Pan Am that appellant was given an opportunity to be considered for a job at United; his employment with Pan Am, not to mention his affiliation with ALPA, put him in a position to be considered before other potential job applicants. As an ALPA member, he benefitted from representation by a national union throughout the course of the transfer negotiations. He cannot accept this status when it benefits him, then disavow it when it is no longer beneficial.[8]

---

7. The Supreme Court performed a similar analysis in *Day,* 360 U.S. 548, 79 S.Ct. 1322. In *Day,* the Supreme Court found retired employees subject to the RLA despite the fact that as the dissenters noted, *see* 360 U.S. at 555, 79 S.Ct. at 1326, a retired worker could not be "in the service of" nor subject to the railroad's continuing authority to supervise him. The majority indicated that

  [a]ll the considerations which led Congress to entrust an expert administrative board with the interpretation of collective bargaining agreements are equally applicable when, as here, the employee has retired from service after initiating a claim for compensation for work performed while on active duty. The nature of the problem and the need for experience and expert knowledge remain the same. The same collective bargaining agreement must be construed with the same need for uniformity of interpretation and orderly adjustment of differences.

  *Id.* at 551, 79 S.Ct. at 1324. Thus, the RLA was held applicable despite the fact that a retired worker did not fit neatly within the formal definition of employee in the Act.

8. The union could, pursuant to 45 U.S.C. § 184, attempt to convene a system board of adjustment where appellant's minor dispute would be arbitrated. For a discussion of appellant's argument

We believe this is precisely the sort of dispute that belongs before a system board of adjustment. During all relevant times, Pyles remained in the employ of an airline. The agreements contemplated just such a direct transfer of employees from one airline to another. In fact, Pyles' entire claim is premised on his allegation that he was contractually entitled, pursuant to a modified CBA, to transfer to United. We thus regard Pyles as an employee as defined by, and thus within the scope of, the RLA.

## IV.

■ Appellant contends that if we hold that his claim is preempted, we shall leave him remediless because he would lack a forum in which to present his case. We cannot agree. While the RLA expresses a clear preference for arbitration of minor disputes, it is equally clear that it reflects a strong congressional interest in seeing that employees are not left remediless. *See Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 336 (3d Cir.1993). Among these two competing concerns, "one should be sacrificed to the other only when there is no realistic alternative." *Id.* We are not forced to choose between the two, however, despite counsel's

that the union would not assist him in processing his grievance, see *infra* part IV.

9. The airline and railroad industries differ in the procedures available to their respective employees for arbitration of disputes. In the railroad industry, the failure of the employer or the union to convene a special board of adjustment is not fatal to a grievant's administrative claim; § 153 of the RLA creates a National Railroad Adjustment Board to which disputes can be taken. *See* 45 U.S.C. § 153, par. First, (i)–(j) (1988); *Elgin, J. & E. Ry. v. Burley*, 325 U.S. 711, 733–41, 65 S.Ct. 1282, 1294–98, 89 L.Ed. 1886 (1945), *adhered to on reh'g*, 327 U.S. 661, 66 S.Ct. 721, 90 L.Ed. 928 (1946). Railroad workers have standing individually to pursue claims before the National Railroad Adjustment Board. *See O'Mara v. Erie Lackawanna R.R.*, 407 F.2d 674, 677 (2d Cir.1969), *aff'd sub nom. Czosek v. O'Mara*, 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970).

Whether airline employees also have a right to pursue claims individually is less clear. *See Stevens*, 504 F.Supp. at 334. Section 153 does not extend to the airline industry. *See* 45 U.S.C. § 182. Instead, 45 U.S.C. § 184 imposes a compulsory duty on airlines and employees, "acting through their representatives," to establish system boards of adjustment for the resolution of

assertion that ALPA would not bring an action before the system board of adjustment on Pyles' behalf. Even given the alleged recalcitrance of the union, Pyles had options at his disposal.

Appellant should first have attempted to pursue his grievance before a system board of adjustment individually (or with counsel) and without any union assistance. *See Stevens v. Teamsters Local 2707*, 504 F.Supp. 332, 334 (W.D.Wash.1980) (airline employees have statutory right to pursue grievances individually, and in some cases will be parties entitled to submit matters to the system board).[9] Because the adjustment board's jurisdiction is exclusive and primary, it was Pyles' obligation to make an attempt to have his case heard there before resorting to federal court. Pyles has not alleged that he has exhausted these administrative remedies.

Alternatively, if the pursuit of an administrative remedy became truly impossible, appellant could have sought to demonstrate that he qualified for an exception to the exhaustion requirement. Employees can avail themselves of remedies in federal court without exhausting administrative remedies if their employer repudiates the grievance machinery or the union wrongfully refuses to

disputes. The provision that permits special boards of adjustment in railroad cases, § 153, uses this same phrase. Courts have interpreted "representatives" to mean, at least for purposes of § 153, only union representatives. Therefore, individual railroad employees are foreclosed from convening special boards. *See Brotherhood of Locomotive Eng'rs v. Denver & R.G.W.R.R.*, 411 F.2d 1115, 1118 (10th Cir.1969); *O'Neill v. Public Law Bd.*, 581 F.2d 692, 696 n. 7 (7th Cir. 1978).

Unlike in the railroad industry, however, airline employees do not have a national board to which they can resort, for although a National Air Transport Adjustment Board was contemplated in 45 U.S.C. § 185, it was never created. If the language of § 184 is interpreted in the same manner as that of § 153, airline employees will have no way to pursue administrative claims without union assistance. Because Congress intended to extend to airline employees "the same benefits and obligations available and applicable in the railroad industry," *International Assoc. of Machinists v. Central Airlines, Inc.*, 372 U.S. 682, 685, 83 S.Ct. 956, 958, 10 L.Ed.2d 67 (1963), we believe that individual airline employees *are* entitled to convene special boards of adjustment as a matter of statutory right. In addition, a CBA may provide for individual resolution of disputes.

process a grievance. *See Vaca v. Sipes*, 386 U.S. 171, 185–86, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). Likewise, an exception to the exhaustion requirement exists for situations where proceeding with administrative remedies would be "wholly futile." *See Glover v. St. Louis–San Francisco Ry.*, 393 U.S. 324, 330–31, 89 S.Ct. 548, 551–52, 21 L.Ed.2d 519 (1969). Appellant has not properly alleged, much less proven, that any of these exceptions apply. Appellant does suggest in his brief that United would attempt to block on jurisdictional grounds any action before a system board. This statement, however, is conclusory and speculative; it is insufficient to make the requisite showing of repudiation or futility. Consequently, appellant has failed to establish facts that would justify waiver of the exhaustion requirement.

█ Finally, appellant could have brought suit against his union. A union's failure to represent properly an employee may lead to a claim in federal court for breach of the union's duty of fair representation. *See Steele v. Louisville & N.R.R.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Vaca*, 386 U.S. at 177, 87 S.Ct. at 909–10. In this situation, "a suit against the union for breach of its duty of fair representation is not ... subject to the ordinary rule that administrative remedies should be exhausted before resort to the federal courts." *Czosek v. O'Mara*, 397 U.S. 25, 28, 90 S.Ct. 770, 772, 25 L.Ed.2d 21 (1970). Thus, if a union has through its obstinacy effectively eliminated any possibility of administrative review, an employee can seek relief in federal court. Whether Pyles has a claim against his union or not is immaterial to our analysis, though, for he has not alleged a cause of action for breach of duty, nor has he joined the union as a party in this case.

As the above makes apparent, appellant had many options available to ensure that his case was heard, either through arbitration before a system board or in a federal court. Unfortunately, he chose none of those options.

AFFIRMED.