# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-1405
No. 04-1757

_____

| | |
|---|---|
| Susan Smith, | * |
| | * |
| Plaintiff - Appellant, | * |
| | * |
| v. | * Appeals from the United States |
| | * District Court for the |
| American Airlines, Inc.; TWA | * Eastern District of Missouri. |
| Airlines, LLC; Airline Pilots | * |
| Association Int'l, | * |
| | * |
| Defendants - Appellees. | * |

_____

Submitted: January 11, 2005
Filed: July 18, 2005

_____

Before LOKEN, Chief Judge, MORRIS SHEPPARD ARNOLD and MURPHY, Circuit Judges.

_____

LOKEN, Chief Judge.

After American Airlines (AA) purchased the assets of bankrupt Trans World Airlines, Inc. (TWA), AA refused to hire Susan Smith, a former TWA pilot. The Air Line Pilots Association (ALPA) filed separate grievances on Smith's behalf against TWA and AA. ALPA settled the TWA grievance with TWA's bankruptcy estate. When AA rejected Smith's separate grievance against AA, Smith commenced this

action against AA[1] and ALPA. The district court[2] granted summary judgment in favor of defendants on all claims. Smith appeals the dismissal of her Railway Labor Act (RLA) claims, arguing that the transition collective bargaining agreement gave her a right to post-acquisition employment with AA, and that she may litigate this claim in federal court because (i) AA repudiated the exclusive grievance/arbitration remedies in the collective bargaining agreement, and (ii) ALPA breached its duty of fair representation by not vigorously pursuing her rights in the grievance process. Reviewing the district court's grant of summary judgment *de novo*, we affirm.

## I. Background.

In 1998, while employed by TWA, Smith received an offer of employment from AA and secretly enrolled in its pilot training program. Smith took the AA pilot training during a personal leave of absence from TWA. Both airlines then considered her an employee. Some weeks later, AA discharged Smith, primarily because she failed to successfully complete the training program. Smith returned to her duties as a TWA pilot when her personal leave ended.[3]

The 2001 Asset Purchase Agreement between AA and TWA provided that AA would offer post-acquisition employment to "all of [TWA's] U.S.-based union employees (*other than personnel who* (*A*) *have previously been terminated by* [*AA*]

---

[1]AA established a wholly owned subsidiary, Trans World Airlines LLC, to operate TWA's assets during the post-acquisition transition period. Both AA and its subsidiary are co-defendants in this action. For convenience, we refer to the actions of the subsidiary as though they were actions of AA.

[2]The HONORABLE HENRY E. AUTREY, United States District Judge for the Eastern District of Missouri.

[3]Smith's simultaneous employment with AA and TWA violated both airlines' policies. Smith admits TWA would likely have fired her had she disclosed this fact.

. . . or (B) would not be qualified for employment under [AA's] general hiring policies as in effect at Closing)" (emphasis added). That provision was inconsistent with ALPA's existing collective bargaining agreement with TWA, which provided that any successor of TWA must "employ the pilots on the TWA Pilots System Seniority List." But threatened with possible bankruptcy court repudiation of the entire bargaining agreement, ALPA agreed to modify this aspect of the existing agreement and, after the closing, to enter into a transition collective bargaining agreement with AA. According to Smith's view of the relevant documents, the transition agreement incorporated by reference a pre-closing letter from AA to ALPA stating: "It is [AA's] intention that all of TWA's U.S. based represented employees who meet the qualifications described in the Asset Purchase Agreement become [AA] employees as quickly as possible."

After the closing, AA hired TWA pilots it considered eligible under the Asset Purchase Agreement provision but advised that Smith and six others were ineligible because they were previously terminated by AA or an AA affiliate. ALPA filed grievances on behalf of the seven pilots. In the months following the asset purchase, the grievances ALPA filed with TWA for wrongful discharge became claims for administrative expenses in TWA's bankruptcy proceedings. AA refused to proceed with the separate grievances ALPA filed under the transition collective bargaining agreement on the ground that the ineligible pilots were not AA employees covered by that agreement. However, AA notified the ineligible pilots that they could appeal its hiring decisions by submitting "documentation they feel is appropriate to support their request for review." In addition, ALPA officials sought meetings for the seven pilots and informally attempted to plead their cases. Four submitted documentation and argued that their prior separations should not be characterized as terminations. AA agreed and hired them. AA later offered to meet informally with the other three. Smith submitted no documentation supporting her claim that she had resigned from AA in 1998, and she declined AA's offer to discuss her case informally. She was not hired. This lawsuit followed.

## II. The RLA Claims.

Smith argues that AA breached the transition collective bargaining agreement by failing to hire her after purchasing TWA's assets and by refusing to process her grievance under that agreement. AA denies that it was contractually bound to hire Smith. Moreover, AA contends that Smith has no claim under the RLA because she was not an AA employee within the meaning of either the RLA, see 45 U.S.C. § 151, Fifth, or the transition bargaining agreement. The district court agreed.

Whether Smith was an employee within the meaning of the RLA is an aspect of the merits of her claim. That claim is, in the language of the Act, a "minor dispute" -- a controversy "over the meaning of an existing collective bargaining agreement in a particular fact situation." Bhd. of R.R. Trainmen v. Chicago R. & I.R. Co., 353 U.S. 30, 33 (1957). This is a federal claim that "must be resolved only through the RLA mechanisms, including the carrier's internal dispute-resolution processes and an adjustment board established by the employer and the unions." Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253 (1994). Under the RLA, minor disputes are subject to mandatory arbitration before an adjustment board which has primary jurisdiction to construe the collective bargaining agreement. The aggrieved employee "may not resort to the courts in the first instance." Penn. R.R. v. Day, 360 U.S. 548, 552 (1959).[4] However, the Supreme Court has recognized exceptions to this rule, situations "in which the employee should not be limited to the exclusive remedial

---

[4]Technically, when the employee asserts a state law breach of contract claim, the claim is preempted by the RLA if it depends on an interpretation of the collective bargaining agreement. See McCormick v. Aircraft Mechanics Fraternal Ass'n, 340 F.3d 642, 644 (8th Cir. 2003). On the other hand, when the employee asserts a *federal* claim under the RLA for breach of the collective bargaining agreement, as Smith does in this case, the question is not preemption but whether the claim is barred by the failure to exhaust the contractual adjustment board remedy as construed by the Supreme Court. See Andrews v. Louisville & N.R.R., 406 U.S. 320, 325 (1972).

procedures established by the contract." Vaca v. Sipes, 386 U.S. 171, 185 (1967). Smith argues that two of those exceptions are applicable here.

1. Emphasizing on appeal an issue that was preserved but not argued in the district court, Smith argues that she may litigate her RLA breach of contract claim in federal court, without exhausting the adjustment board remedy provided by the transition collective bargaining agreement, because AA's refusal to process her grievance under that agreement "amounts to a repudiation of those contractual procedures." Vaca, 386 U.S. at 185. We disagree.

When AA declared seven pilots ineligible for post-acquisition hire because of prior terminations, Smith and the others argued they had a contractual *right* to become covered employees, and ALPA filed grievances on their behalf. The transition agreement provided grievance procedures for "pilots covered by this Agreement." AA took the position that these contractual procedures did not apply because Smith and the others were not hired and therefore were not employees "covered by" the agreement. Instead, AA offered an informal procedure whereby the seven could seek review of its initial decisions. Four of the seven did so and were hired; Smith refused AA's offer of an informal meeting. The transition agreement further provided that the RLA-mandated adjustment board "shall have jurisdiction over disputes between any employee covered by this Agreement and the Company, growing out of . . . interpretation or application of any of the terms of this Agreement." AA took the position that the adjustment board lacked jurisdiction over this dispute, again because Smith was not a covered employee.[5]

_____

[5]Though applicants for employment are not "employees" under the RLA if the collective bargaining agreement leaves hiring decisions to the employer's discretion, a dispute over whether the relevant collective bargaining agreement gives employees of the selling carrier a right to priority in the buyer's post-acquisition hiring may well be an issue that must be submitted to the adjustment board. See Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1051-52 (11th Cir. 1996).

The result of this impasse was a classic dispute over "arbitrability," that is, the question whether AA and ALPA agreed in the transition agreement to submit this type of disagreement to the adjustment board. The way to resolve such disputes is by a suit to compel arbitration. See generally First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995). In RLA cases, arbitrability determines the adjustment board's jurisdiction and is therefore a question for the court. But "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT&T Tech., Inc. v. Communications Workers of Amer., 475 U.S. 643, 649 (1986).

Viewed in this light, it is apparent that AA did not "repudiate" the grievance and arbitration procedures in the transition collective bargaining agreement. It simply took the position that they did not apply to this dispute. ALPA could have presented the question of arbitrability by suing to compel AA to submit the dispute to the adjustment board. But ALPA did not do, and Smith does not contend this was a breach of the union's duty of fair representation. Nor does Smith seek to compel arbitration in this lawsuit. Instead, she asks the federal court to litigate the merits of her claim, contrary to the strong federal policy that RLA minor disputes should be arbitrated, not litigated. Where all an employee shows is the need for judicial help in compelling arbitration, the repudiation exception does not apply. A federal court may compel arbitration at the employee's (or the union's) request, but it may not intrude upon the adjustment board's authority by deciding the merits of the collective bargaining agreement dispute. See Capraro v. United Parcel Serv. Co., 993 F.2d 328, 336-37 (3d Cir. 1993); accord Pyles, 79 F.3d at 1052.

2. Alternatively, Smith renews on appeal her primary RLA argument to the district court -- that she may bring her breach of contract claim to federal court without exhausting the mandatory arbitration remedy under the recognized exception for "hybrid" claims "that allege both a breach of the collective bargaining agreement by the employer and a breach of the duty of fair representation by the union."

McCormick, 340 F.3d at 645. The duty of fair representation is breached "when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." Vaca, 386 U.S. at 190. Smith alleges that ALPA breached its duty by more aggressively pursuing the claims of the six other ineligible pilots during the informal review process conducted by AA.

Some circuits have limited this exception to cases where the union's breach of duty caused the employee to lose her right to press a grievance before the arbitration board. See Miklavic v. USAir Inc., 21 F.3d 551, 557 (3d Cir. 1994), and cases cited. This limitation is consistent with the purpose behind the exception, see Vaca, 386 U.S. at 185, and thus has much to commend it. Smith does not fall within the exception so limited because (i) ALPA submitted her grievance to the adjustment board, (ii) Smith does not claim that ALPA breached its duty by failing to bring an action to compel arbitration, and (iii) Smith failed to show that ALPA's action prevented her from pressing her own grievance by suing to compel arbitration.

The district court did not consider this limitation, concluding instead that "the record establishes that none of the actions taken by ALPA were arbitrary, discriminatory or in bad faith." We agree. ALPA filed grievances on behalf of the ineligible pilots and then assisted them in pursuing relief through AA's informal review process. Four pilots presented satisfactory evidence explaining their prior separations and were hired. Smith refused to meet with AA and acknowledged she knew of no document establishing that she was not terminated by AA. "A union does not act arbitrarily simply because it does not pursue a grievance that it has decided lacks merit." Schmidt v. IBEW, Local 949, 980 F.2d 1167, 1170 (8th Cir. 1992) (quotation omitted). In these circumstances, even if true, ALPA's alleged decision to assist more aggressively the ineligible pilots who had stronger claims for relief under the transition collective bargaining agreement than Smith does not come close to establishing a breach of the union's duty of fair representation.

For the foregoing reasons, we conclude that Smith's RLA claims against both AA and ALPA were properly dismissed.

### III. A Taxation of Costs Issue.

After the district court granted summary judgment dismissing Smith's claims, defendants filed bills of costs. Smith failed to object, and the clerk taxed the costs claimed. One month later, Smith moved to reconsider, arguing that many of the taxed costs were improper. The district court denied this motion, noting that Smith did not "set forth any authority under the applicable rules . . . for the Court to reconsider the taxation of costs," and that "the costs which were taxed are in accordance with 28 U.S.C. § 1920." On appeal, Smith urges us to treat her motion to reconsider as a motion for relief under Rule 60(b)(1). So construed, she argues that its denial was an abuse of discretion because she terminated her trial counsel before receiving the bills of costs and should therefore be relieved from complying with the local rule requiring the filing of objections within fourteen days.

Rule 60(b)(1) authorizes the district court to grant relief from an order based upon a showing of "mistake, inadvertence, surprise, or excusable neglect." In this case, Smith made no such showing to the district court. Indeed, she did not argue excusable neglect nor even cite Rule 60(b)(1). Thus, the court did not abuse its discretion in failing to grant Rule 60(b) relief. Moreover, even if Smith had raised the issue of excusable neglect in the district court, the local rule requiring objections to the bills of costs within fourteen days was clear, and therefore her failure to comply "will not constitute excusable neglect under Rule 60(b)." Bennett v. Dr. Pepper/ Seven Up, Inc., 295 F.3d 805, 808 (8th Cir. 2002).

The judgment of the district court is affirmed.

_____

-8-