[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 16, 2009
THOMAS K. KAHN
CLERK

_____

No. 09-10709
Non-Argument Calendar

_____

D. C. Docket No. 08-00217-CV-FTM-99-SPC

LUIS JIMENEZ,
individually,

Plaintiff-Appellant,

versus

COLLIER TRANSIT MANAGEMENT, INC.,
a Florida corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 16, 2009)

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Luis Jimenez appeals the district court's order granting summary judgment to Collier Transit Management, Inc. ("Collier"). Jimenez initiated this breach of collective bargaining agreement action after he was terminated from his employment on October 17, 2007. Because we agree with the district court that Jimenez failed to exhaust his remedies as set forth in the collective bargaining agreement, we affirm.

## BACKGROUND

Prior to October 2007, Jimenez worked for Collier as a bus driver and was a member of Local 500 of the Transport Workers Union of America, AFL-CIO (the "union"). A collective bargaining agreement ("the agreement") entered into between the union and Collier covered Jimenez's employment at Collier.

The agreement outlines a grievance procedure through which an employee who believes that he has been discharged without just cause may have his case reviewed. The agreement's grievance procedure consists of a two-step process. Step I states:

> The grievance shall be presented to the Company within seven (7) days of the alleged grievance. The grievance shall be discussed by the supervisor, the aggrieved employee, and the aggrieved employee's steward who shall represent the employee, if the employee so desires, in an earnest attempt to settle the matter. The supervisor shall evaluate the grievance or complaint and render a decision.

2

Step 2 states:

> If not settled in Step I, the grievance shall be submitted in writing to the General Manager within ten (10) days after the Unions's receipt of the Step I reply. A meeting between the General Manager, the aggrieved employee, and the aggrieved employee's steward who shall represent the employee if the employee so desires, shall be held within seven (7) days following the Company's receipt of the written grievance. A reply in writing shall be mailed by the General Manager to the Shop Steward of the Local Union, with a copy to the employee, no later than five (5) days after the Step II meeting.

Article 9, Section A of the agreement further provides that "[s]hould any grievance remain unsettled after exhausting the aforementioned [grievance] procedure, either party hereto shall, if the party desires, demand arbitration . . . Otherwise the grievance shall be considered settled."

Additionally, Section D of Article 9 of the agreement provides that certain rights reserved to management are not subject to arbitration. Article 2 reserves certain rights to the company "to manage its business" which includes the right "to discipline and discharge employees for just cause."

On October 16, 2007, Jimenez was convicted of misdemeanor assault and battery arising out of a dispute with a neighbor. The next day Jimenez was discharged from his employment at Collier. Collier informed him that it characterized his discharge as one done for "just cause." In a letter dated October 26, 2007, Jimenez's General Manager at Collier, Elizabeth Suchsland, informed

Jimenez that his employment was terminated because (1) the court-imposed sentence would prevent him from reporting for work and (2) the nature of his criminal misconduct "call[ed] into question [his] ability to perform as an employee without exposing members of the riding public . . . to unacceptable risks." The letter also thanked Jimenez for "coming to see" Suchsland about his termination.

Jimenez filed suit in the U.S. District Court for the Middle District of Florida claiming Collier breached the agreement. His amended complaint alleged that Collier breached the agreement by (1) wrongfully discharging him where the incident giving rise to his misdemeanor conviction was unrelated to his employment and (2) failing to provide Jimenez with the right to arbitration. Specifically, Jimenez alleged that certain provisions of the agreement itself denied him the right to arbitration given in other provisions. Jimenez asserted that the language of Article 2 when read together with Section D of Article 9 removes decisions regarding termination for just cause from the arbitration provision, and that this language thereby put Collier in breach of the agreement.

Collier filed a motion for summary judgment, arguing that Jimenez was not entitled to bring a lawsuit because he had not exhausted the grievance procedures provided in the agreement. Jimenez responded that he had exhausted the procedures. Jimenez contended that he satisfied Step I by contacting the General

4

Manager "after being fired to dispute and discuss the firing." Jimenez argued that this satisfied the requirement that he present his grievance to Collier through his supervisor when he contacted Suchsland because she had "made herself the 'go-to-person' regarding [Jimenez's] misdemeanor issue" by writing him a letter of warning after he was charged with the crime. As for Step II, wherein the employee is required to submit a written grievance after which a meeting will be held between the General Manager, the aggrieved employee, and the aggrieved employee's steward, Jimenez asserted that he satisfied this requirement by verbally contacting the General Manager a second time. He argues that this second contact satisfies Step II because Suchsland's letter demonstrates that requesting a meeting would be "futile" as Suchsland had made up her mind to fire Jimenez in June when he was charged with the misdemeanor.

The district court found that Jimenez had failed to exhaust the agreement's grievance procedures and that no exception for futility applied. Accordingly, the district court granted Collier's motion for summary judgment. Jimenez appealed.

## STANDARD OF REVIEW

"We review the district court's grant of summary judgment de novo, applying the same legal standards that bound the district court, and viewing all facts and reasonable inferences in the light most favorable to the nonmoving

5

party." Cruz v. Publix Super Markets, Inc., 428 F.3d 1379, 1382 (11th Cir. 2005) (citation and quotation omitted). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## DISCUSSION

"An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under § 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. § 185(a)." Clayton v. Int'l Union, United Auto., Aerospace, and Agr. Implement Workers of Am., 451 U.S. 679, 681 (1981) (citing Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-53 (1965)). If he does not exhaust those remedies or does not participate in arbitration where required under the agreement, the employee may not pursue relief in the courts. Republic Steel, 379 U.S. at 657-58.

Here, the parties dispute whether Jimenez exhausted his remedies under the agreement. Jimenez's main argument is that he was not required to arbitrate the question of his wrongful termination because the arbitration agreement, under Article 2 and Section D of Article 9, does not provide for arbitration where

6

management has exercised its right to terminate an employee for just cause. Although Jimenez couches this argument in language of "futility," his real argument is that the arbitration agreement does not actually provide for arbitration where the management exercises its right to discharge an employee for just cause.

We find no support in the language of the agreement for Jimenez's strained reading that claims for wrongful discharge are removed from the grievance and arbitration requirements. Section C of Article 9 of the agreement states that grievances for "alleged violations of the Agreement" are subject to the grievance procedure and arbitration clauses. The only stated cause of action in Jimenez's complaint is for breach of the collective bargaining agreement. Jimenez's claim is thus clearly covered by the agreement, and Jimenez was required to submit his claim to the grievance process and arbitration before pursuing a judicial remedy.

Furthermore, the agreement provides in Article 9, Section C that arbitration shall be used to resolve questions regarding "the interpretation or application of particular clauses of this Agreement." Jimenez's questions about whether the management rights provision exempts a wrongful discharge claim from the arbitration requirement should have been raised first through the grievance procedure. As there is no evidence that Jimenez did so, he cannot circumvent the agreement by bringing this lawsuit.

7

Additionally, Jimenez's argument that he substantially complied with the grievance procedure fails. Step II clearly requires the submission of a grievance *in writing*. Jimenez acknowledges that he did not submit a written grievance, but argues that verbally contacting Suchsland satisfied that requirement. Nothing in the agreement implies that substantial compliance will suffice. Furthermore, even if substantial compliance with Step II was permitted under the agreement, Jimenez did not submit – nor even attempt to submit – his grievance to arbitration, which is clearly a part of the grievance process established in the agreement. Thus, he clearly failed to exhaust his administrative remedies prior to initiating this lawsuit.

Jimenez next argues that it would have been futile to pursue his claim through the grievance process because Suchsland had clearly made up her mind to terminate Jimenez. "Futility" provides a proper excuse for failing to exhaust remedies set forth in a bargaining agreement. Pyles v. United Air Lines, Inc., 79 F.3d 1046, 1053 (11th Cir. 1996) ("[A]n exception to the exhaustion requirement exists for situations where proceeding with administrative remedies would be 'wholly futile.'"). The futility exception, however, requires more than that the grievance procedures be unpromising. "The test for 'futility' is not . . . whether the employees' claims would succeed, but whether the employees could have availed themselves of the grievance procedure." Mason, III v. Continental Group,

Inc., 763 F.2d 1219, 1224 (11th Cir. 1985). To claim futility, the "employee may not simply *assert* that his use of the grievance procedures would have been futile: he must ordinarily at least have *attempted* to use them." Parham v. Carrier Corp., 9 F.3d 383, 390-91 (5th Cir. 1992) (citing Vaca v. Sipes, 386 U.S. 171, 184-85 (1967)). Jimenez did not allege that he attempted to invoke the grievance procedures and that he was denied meaningful relief. Rather, he argues simply that it would have been unsuccessful because the General Manager had already made up her mind to fire him and because she had already participated in some form of meeting, obviating the need for a formal meeting under Step II. This assertion does not excuse Jimenez for failing to exhaust his remedies or puruse arbitration as required under the agreement on the basis of futility.

Jimenez also argues that Collier "repudiated" his efforts to go through the grievance procedures. Jimenez, however, did not raise this argument before the district court and therefore we will not assess the merits of this assertion. See Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1284-85 (11th Cir. 2003). Jimenez's citation to two cases that happened to discuss repudiation did not preserve that argument for review on appeal. Jimenez cited to Larsen v. AirTran Airways, Inc., 2007 WL 2320592 (M.D. Fla., Aug. 10, 2007) and Durham Life Ins.Co. v. Evans, 1994 WL 447406 (E.D. Pa. Aug. 19, 1994) in his discussion

of futility. The fact that these cases also separately mention repudiation does not support Jimenez's contention that he argued the issue of repudiation before the district court. Although Jimenez's parenthetical regarding Durham did refer to repudiation, a brief reference in a parenthetical is insufficient to preserve an argument. See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (noting that arguments made in passing on appeal are "insufficient to present the matter for adjudication").[1]

**CONCLUSION**

Because Jimenez failed to exhaust his administrative remedies under the operative collective bargaining agreement and did not establish a lawful excuse for such failure, we **AFFIRM** the district court's order granting summary judgment to Collier.

---

[1] Regardless of whether Jimenez raised a repudiation defense to his failure to exhaust administrative remedies in the court below, he would not obtain relief through this doctrine. In order to argue that Collier repudiated the grievance process, he would have to show that he attempted to utilize those procedures. Redmond v. Dresser Industries, Inc., 734 F.2d 633, 636 (11th Cir. 1984) ("[B]efore [the plaintiff] can assert repudiation of the grievance procedure, he must first file his grievance."). As discussed *supra*, Jimenez never attempted to file a written grievance or submit his claim to arbitration.