[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 03-16318

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 30, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00460-CV-J-32-HTS

BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYEES,

Plaintiff-Appellant,

versus

CSX TRANSPORTATION, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 30, 2005)

Before BARKETT, MARCUS and SUHRHEINRICH*, Circuit Judges.

PER CURIAM:

_____

*Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

The Brotherhood of Maintenance of Way Employees (BMWE) appeals from the district court's order denying summary judgment to BMWE and granting summary judgment to CSX Transportation, Inc. (CSX) on BMWE's claim that CSX violated § 2 First of the Railway Labor Act (RLA), 45 U.S.C. § 152 First. Because we conclude that the district court lacked subject matter jurisdiction over the dispute, we vacate its judgment and remand with instructions to dismiss.

## I.

BMWE, the designated collective bargaining representative of certain CSX employees, entered into a collective bargaining agreement with CSX. In a side letter to the agreement, CSX promised that at least 40% of the BMWE-represented employees would have "fixed" headquarters, rather than "floating" headquarters; and those in the latter category would be able to work over a broader geographic range than those in the former. In the side letter, CSX further agreed that

> [t]he percentage of fixed headquartered positions will be determined on a system-wide basis, using a rolling monthly average comparison of both the total number of BMWE-represented positions (less SPG positions) and the number of fixed headquartered positions. The percentages will be reported to the General Chairman on a quarterly basis.

CSX did not timely provide the information required by the agreement for the third and fourth quarters of 1999, the first two quarters for which the

information was due. After BMWE complained about the non-compliance, CSX provided a chart showing the percentages of fixed and floating employees for February, 2001. When BMWE insisted on the provision of the quarterly reports as called for in the agreement, CSX wrote back to state the relevant percentages for the first quarter of 2002. When CSX failed to provide reports for the next two quarters, BMWE again complained, and CSX responded (several months later) by stating the percentages for the first quarter of 2003.

Throughout the course of this correspondence, BMWE repeatedly demanded that CSX supplement the quarterly percentage reports with background information relating to the calculation of the percentages, such as the dates that the information was recorded, the identities of the actual work gangs reported, and the number of employees per gang. CSX refused all such demands, stating that the agreement did not require the provision of any background information.

After BMWE filed a complaint in the United States District Court for the Middle District of Florida, seeking declaratory and injunctive relief, CSX provided the percentages for each period from the third quarter of 1999 through the second quarter of 2003. Again, however, CSX refused to give the requested background information.

3

**II.**

We review the district court's order granting summary judgment <u>de novo</u>, applying the same legal standards as the district court did and viewing all facts in the light most favorable to the non-moving party. <u>See, e.g.</u>, <u>Higdon v. Jackson</u>, 393 F.3d 1211, 1218 (11th Cir. 2004). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

**A.**

CSX argues at the outset that because it has provided the quarterly percentage reports for the requested quarters and has acknowledged its obligation to do so in the future, BMWE's claims as to those percentages are moot.[1] We disagree.

The Supreme Court has held that "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant . . . free to return to his old ways." <u>United States v.</u>

---

[1]Notably, CSX does not assert that BMWE's claim concerning provision of the background information is moot.

4

Concentrated Phosphate Export Ass'n, Inc., 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968) (citation and internal quotation marks omitted). While "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," a defendant's mere statement that there is no evidence that it will violate the law in the future "cannot suffice to satisfy the heavy burden of persuasion which [the Supreme Court] ha[s] held rests upon those in [a defendant's] shoes." Id. "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (citing Concentrated Phosphate, 393 U.S. at 203).

As the district court put it, "CSX[]'s compliance with the percentage reporting requirements . . . was slipshod at best." Order at 16 n.7. CSX repeatedly failed to provide the required information; by its own admission, it had reported percentages for only three quarters between May 11, 1999 (when the agreement was signed) and April 11, 2003 (when BMWE filed suit). This production amounted only to three out of fifteen of the required reports. In fact, the repetitiousness of past conduct is a significant factor that may point towards the

5

likelihood of recurrence. See Horton v. City of St. Augustine, 272 F.3d 1318, 1328 (11th Cir. 2001) (finding that a city's "history of legislating repeatedly" to regulate certain activity indicated that such legislation was likely to recur, and thus that a recent amendment to the challenged portion of the legislation did not render the challenge moot). That CSX did not begin reporting regularly until after BMWE brought suit casts still further doubt on the notion that its compliance was "voluntary" and unlikely to resume once the threat of litigation had passed. CSX has thus fallen far short of meeting the "formidable burden" described in Laidlaw.

Simply put, the question of CSX's obligation to provide the quarterly percentage reports is not moot.

B.

CSX also argues that since BMWE's claim is based on an alleged violation of the collective bargaining agreement, it creates a "minor dispute," over which the district court lacked subject matter jurisdiction. We agree.

Disputes arising under the RLA are divided into two types: major disputes and minor disputes. See generally Consol. Rail Corp. v. Ry. Labor Executives' Ass'n, 491 U.S. 299, 109 S. Ct. 2477, 105 L. Ed. 2d 50 (1989). As the Supreme Court has observed:

6

"In the event of a major dispute, the RLA requires the parties to undergo a lengthy process of bargaining and mediation. Until they have exhausted those procedures, the parties are obliged to maintain the status quo, and the employer may not implement the contested change in rates of pay, rules, or working conditions. The district courts have subject matter jurisdiction to enjoin a violation of the status quo pending completion of the required procedures, without the customary showing of irreparable injury. . . . In contrast, the minor dispute category is predicated on § 2 Sixth and § 3 First (i) of the RLA . . . A minor dispute . . . is subject to compulsory and binding arbitration before the National Railroad Adjustment Board, § 3, or before an adjustment board established by the employer and the unions . . . . § 3 Second. The Board . . . has exclusive jurisdiction over minor disputes. Judicial review of the arbitral decision is limited."

Id. at 302-03 (emphasis added) (footnote and citations omitted). See also

Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 253, 114 S. Ct. 2239, 129 L. Ed.

2d 203 (1994); CSX Transp. Inc. v. Bhd. of Maint. of Way Employees, 327 F.3d

1309, 1320 (11th Cir. 2003).

Consolidated Rail established a standard for distinguishing between minor

disputes and major disputes. In that case, the Court focused primarily on minor

disputes. Beginning with the language of RLA § 3 First (i), which addresses

disputes arising "out of grievances or out of the interpretation or application of

agreements concerning rates of pay, rules, or working conditions," the Court

repeated the language found in its earlier decision in Elgin, Joliet & Eastern

7

Railway Co. v. Burley, 325 U.S. 711, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945),

which explained that this category of disputes

> contemplates the existence of a collective agreement already
> concluded or, at any rate, a situation in which no effort is made to
> bring about a formal change in terms or to create a new one.  The
> dispute relates . . . to the meaning or proper application of a particular
> provision with reference to a specific situation . . . . [T]he claim is to
> rights accrued, not merely to have new ones created for the future.

Id. at 723.

The Court summarized the Burley test as "look[ing] to whether a claim has

been made that the terms of an existing agreement either establish or refute the

presence of a right to take the disputed action," and added that "[t]he

distinguishing feature of such a [minor dispute] is that the dispute may be

conclusively resolved by interpreting the existing agreement."  Consol. Rail, 491

U.S. at 305.  Condensing the Burley formulation even further, the Court provided

a shorthand version of the test:  "major disputes seek to create contractual rights,

minor disputes to enforce them."  Id. at 302 (citing Burley, 325 U.S. at 723).  See

also Hawaiian Airlines 512 U.S. at 258; Atchison, Topeka & Santa Fe Ry. Co. v.

Buell, 480 U.S. 557, 564-65, 107 S. Ct. 1410, 94 L. Ed. 2d 563 (1987).

Similarly, in Hawaiian Airlines, the Supreme Court described the "minor

dispute" category as encompassing all controversies involving rights created

8

solely by collective bargaining agreements. The Court stated that the term "'grievances,' like disputes over 'the interpretation or application' of CBA's [collective bargaining agreements], refers to disagreements over how to give effect to the bargained-for agreement," and observed that "[t]he use of 'grievance' to refer to a claim arising out of a CBA is common in the labor-law context in general." 512 U.S. at 254. The Court further noted that "[o]ur case law confirms that the category of minor disputes contemplated by § 151a are those that are grounded in the CBA," id. at 256, and that "'minor disputes' subject to RLA arbitration are those that involve duties and rights created or defined by the CBA," id. at 258. Finally, the Court explained that "[o]bviously, to say that a minor dispute can be 'conclusively resolved' by interpreting the CBA is another way of saying that the dispute does not involve rights that exist independent of the CBA." Id. at 265.[2] The crucial inquiry is thus whether the source of the plaintiff's asserted legal right is the collective bargaining agreement.

---

[2] See also Ry. Labor Executives' Ass'n v. Boston & Maine Corp., 808 F.2d 150, 159 (1st Cir. 1986) ("It would seem that any breach of an existing collective bargaining agreement, whether 'anticipatory' or otherwise, is precisely what an arbitrable 'minor' dispute is concerned with."); Wolfe v. Norfolk S. Ry. Co., 2003 WL 2007936, at **3 (6th Cir. Apr. 29, 2003) ("Minor disputes include claims involving the meaning or application of an existing collective bargaining agreement provision to a specific situation or case."); Childs v. Pa. Fed'n Bhd. of Maintenance of Way Employees, 831 F.2d 429, 437 (3d Cir. 1987) ("[M]inor disputes involve the application of a valid agreement to a specific grievance); Chicago & N.W. Transp. Co. v. Ry. Labor Executives' Ass'n, 908 F.2d 144, 148 (7th Cir. 1990) ("[A] grievance is merely a complaint that arises under the agreement....") (internal citation omitted).

In Consolidated Rail, the Supreme Court limited the ability of an RLA defendant to convert a statutory claim into a "minor dispute" by merely asserting that the challenged conduct is permitted by an applicable collective bargaining agreement. The Court held that the contested action must be "arguably" justified by the parties' agreement before the minor dispute rule can apply:

> "Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major."

Consol. Rail, 491 U.S. at 307. Thus, merely claiming a contractually based right to take or resist the action in question does not render the dispute a minor dispute. However, we have previously observed that the Consolidated Rail standard for "arguability" is low, and stated that "if a reasonable doubt exists as to whether the dispute is major or minor, we will deem it to be minor." CSX Transp., 327 F.3d at 1321 (citation omitted). Moreover, Consolidated Rail did not involve a situation in which the plaintiff's claim was itself based on a collective bargaining agreement.

BMWE argues that CSX's violation of the obligations imposed or allegedly imposed by the agreement rises to the level of a violation of § 2 First. BMWE repeatedly emphasizes § 2 First's duty to "maintain agreements"; the implication

10

is simply that by failing to provide the quarterly percentage reports and background information, CSX has failed to maintain the agreement with BMWE. According to BMWE, such an alleged statutory violation renders irrelevant the question of whether the dispute is major or minor. We remain unpersuaded.

BMWE relies heavily on Delta Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 238 F.3d 1300 (11th Cir. 2001). BMWE says that the plaintiff's § 2 First claim in that case was "based in part on an agreement commitment," and that the court addressed the plaintiff's claim regardless. Therefore, the argument goes, a district court should assert jurisdiction to hear and decide claims under § 2 First, even if those claims could also give rise to a minor dispute. This argument not only collides with the ruling in Consolidated Rail, but also misapprehends the holding in Delta itself.

In Delta, a group of airline pilots began collectively to decline to work overtime while their employer and their union were engaged in negotiations to replace their existing collective bargaining agreement with a new agreement. The employer sued under § 2 First, seeking to enjoin the pilots' collective action. Since the pilots' conduct was intended to "pressure [the employer] into making concessions in the negotiations for a new" agreement, the statutory claim raised a major dispute, over which the district court had jurisdiction. Id. at 1303. The

11

union asserted that the existing agreement "arguably" allowed the pilots to refuse to work overtime, and thus that the employer's claim should be dealt with as a minor dispute. We, however, found that the agreement did <u>not</u> "arguably" permit the pilots' behavior, and thus that the case did not involve a minor dispute. Indeed, we noted that classification of the case as a minor dispute "would have rendered [the dispute] subject to mandatory and exclusive arbitration under the RLA." <u>Id.</u> at 1307.

BMWE's claim as to the quarterly reports raises a minor dispute. First, CSX is not attempting to create new rights or to eliminate existing duties under the agreement. Indeed, its argument regarding mootness is premised on the very fact that it has complied with the relevant obligation by (belatedly) providing the requested percentages. Second, BMWE is seeking a declaratory judgment stating that CSX's failure to provide the percentages violates the very agreement before the Court -- in effect, a formal interpretation or application of the agreement. Third, and more generally, the obligation in question clearly derives from the agreement itself, rather than from some external statutory source. The <u>Consolidated Rail</u> Court's "shorthand" definition of minor disputes as those in

12

which a party seeks "to enforce" a collective bargaining agreement surely encompasses the present action.[3]

BMWE's claim as to the background information also raises a minor dispute. The obligation to provide such information, if it existed at all, was implicit in and derived from the side letter's provision requiring the quarterly reports. The determination of whether such an obligation existed plainly requires interpretation of the agreement and the side letter.

BMWE also suggests that because the side letter obliged CSX to report the quarterly percentages, § 2 First required CSX to provide (upon request) the backup information used to calculate those percentages. Such backup information, according to BMWE, was necessary to ensure that CSX was not merely providing

---

[3] The dissent suggests that there is no practical reason to refer this case to arbitration before the Board, since the primary advantage of such arbitration -- the Board's expertise in interpreting collective bargaining agreements -- is not needed to resolve the question of whether the quarterly reports were required. Because CSX concedes that point, the argument goes, the Board's only function would be to issue an award confirming the obvious, and BMWE would then have to return to the district court in order to seek enforcement of the award. Under this view, it would be more efficient simply to require the district court to issue the declaratory judgment now, and to skip the extra procedural steps.

The relevant question, however, is not whether the district court is the more efficient forum (as it may well be), but whether it has jurisdiction to act. The district court's jurisdiction does not turn on the ease or difficulty of the interpretive question, but rather on whether the dispute is over rights created and defined by the collective bargaining agreement. Because the Board's jurisdiction over minor disputes like the one at hand is exclusive, the district court is without the authority simply to resolve the claim - - which BMWE has brought in the wrong forum - - in the name of efficiency. For us to hold otherwise would enable a party to sidestep the arbitration process whenever it may be convenient.

13

baseless or "sham" percentage figures, while secretly reducing the number of "fixed" employees to a point below the agreed-upon figure. Under this view, the provision of such information and the enabling of basic compliance verification was necessary for CSX to demonstrate a "reasonable effort" to maintain the agreement and to settle the dispute.

BMWE's reading of the statute, however, effectively circumvents Consolidated Rail's minor dispute rule. Indeed, under this reading, every specific right or duty imposed by a collective bargaining agreement would generate additional rights or duties in the statute. Virtually any dispute over the meaning of a term of an agreement could be recast as a dispute over the corresponding § 2 First requirements, opening the door to federal subject matter jurisdiction. Moreover, the inference of such additional statutory requirements could undermine the parties' negotiation of collective bargaining agreements, since the addition of new agreement terms could lead to the imposition of unforeseeable statutory liability in future cases. It would thus be difficult for the parties to define and control with precision their respective obligations, even through the most careful of drafting efforts.

Simply put, any obligation to provide either the quarterly percentage reports or the requested background information can only have derived from the

14

agreement and the side letter. And, the identification of these obligations requires the interpretation and application of the side letter, a function to be performed by the Board. Therefore, we are constrained to conclude that the district court lacked subject matter jurisdiction over BMWE's claims. Accordingly, we vacate and remand the case to the district court, with instructions to dismiss for lack of subject matter jurisdiction.

**VACATED AND REMANDED.**

BARKETT, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority's conclusion in Part II.A that BMWE's claims regarding the quarterly percentage reports are not moot, and its conclusion in Part II.B that BMWE's claim as to the provision of background information is a "minor dispute" over which we lack jurisdiction. However, I disagree with its holding that BMWE's quarterly percentage reports claim is also a "minor dispute". That conclusion rests, in my opinion, on a misreading of the distinction between minor and major disputes laid out in Consolidated Rail Corp. v. Railway Labor Executives' Ass'n, 491 U.S. 299, 109 S. Ct. 2477, 105 L. Ed. 2d 250 (1989), and Elgin, Joliet & Eastern Railway Co. v. Burley, 325 U.S. 711, 65 S. Ct. 1282, 89 L. Ed. 1886 (1945). When, as in this case, a carrier refuses to comply with an undisputed provision in a collective bargaining agreement, effecting a unilateral change in the agreement's terms, the resulting dispute is major, not minor.

Under Consolidated Rail, when a party to a collective bargaining agreement "asserts a contractual right to take the contested action," the dispute is minor "if the action is arguably justified by the [agreement's] terms." Consol. Rail Corp., 491 U.S. at 307. On the other hand, if the party's contractual justification is "obviously insubstantial or frivolous, [or] made in bad faith," the dispute is major. Id. at 307-10. CSX admitted at oral argument that it could not arguably justify its

16

refusal to provide the reports under the agreement's terms. ("By repeatedly failing to comply with this obligation to provide the reports, CSX-T[ransportation] effectively read the obligation to provide the reports out of the agreement, and changed the agreement.").[1] Thus, this refusal must constitute a major dispute, even under the low standard of "arguability" of CSX Transportation, Inc. v. Brotherhood of Maintenance of Way Employees, 327 F.3d 1309, 1321 (11th Cir. 2003). See Ass'n of Flight Attendants, AFL-CIO v. United Airlines, Inc., 976 F.2d 102, 104 (2d Cir. 1992) (noting that "a unilateral and enjoinable change in the collective agreement" would constitute a major dispute, and contrasting it with "a legitimate disagreement over an ambiguity in a collective agreement" subject to arbitration that formed the focus of the case).

Despite acknowledging this language in Consolidated Rail, the majority ultimately decides that this dispute was minor based on the Supreme Court's "shorthand" formulation of the minor-major dispute test in the same case, which explains that "major disputes seek to create contractual rights, minor disputes to enforce them." Consol. Rail Corp., 491 U.S. at 302 (citing Burley, 325 U.S. at

---

[1] This undermines the majority's conclusion that "CSX is not attempting to create new rights or to eliminate existing duties under the agreement." Ante at __. In fact, by holding that this claim is not moot, the majority implicitly recognizes that CSX may attempt to write this provision out of the agreement again in the future.

17

723).  Because the obligation to provide the quarterly reports derives from a provision in the agreement, the majority reasons, the dispute concerns the enforcement of a contractual right, and therefore must be a minor dispute subject to arbitration.

"Shorthand" formulations of Supreme Court jurisprudence do not always capture the precision or totality of the Supreme Court's holdings, and I do not believe they do so in this case.  The majority's conclusion ignores the language that the "shorthand" test summarizes, which classifies disputes "where it is sought to change the terms of [an agreement]" as major disputes.  Burley, 325 U.S. at 723. In contrast, the Court described minor disputes as:

> contemplat[ing] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one. The [minor] dispute relates either to the meaning or proper application of a particular provision with reference to a specific situation or to an omitted case.

Id. (emphasis added).  By refusing to comply with a provision in the collective bargaining agreement without justification, CSX made an "effort…to bring about a formal change in [its] terms."  Id.  And because CSX admits that it could not arguably justify its refusal under the agreement's terms, the dispute does not "relate[] either to the meaning or the proper application of a particular provision

18

with reference to a specific situation." Id. CSX concedes that the agreement required it to provide the reports; it simply refused to comply.

Moreover, classifying this dispute as minor clashes with Consolidated Rail's observation that under Burley, the "distinguishing feature" of a minor dispute is that it "may be conclusively resolved by interpreting the existing agreement." Consol. Rail. Corp., 491 U.S. at 305. In such situations, the arbitrators, who are "experts in the interpretation of agreements," Air Line Pilots Ass'n, Int'l v. UAL Corp., Int'l Ass'n of Machinists & Aerospace Workers, 874 F.2d 439, 444 (7th Cir. 1989), play a valuable role. Because collective bargaining agreements are complicated contracts that "cannot define every minute aspect of the complex and continuing relationship" between carrier and union, see Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 378, 94 S. Ct. 629, 38 L. Ed. 2d 583 (1974) (commenting in context of the Labor Management Relations Act); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578-80, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960) (same), arbitrators' expertise in "the common law of [the] particular industry" makes them

specially able to interpret their provisions.  Consol. Rail Corp., 491 U.S. at 310

(quoting Warrior & Gulf Navigation Co., 363 U.S. at 579).[2]

---

[2] Relying on Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994), the majority asserts that the "crucial inquiry" in classifying a dispute as major or minor is "whether the source of the plaintiff's asserted legal right is the collective bargaining agreement." Ante at __.  I disagree.  The crucial inquiry is not whether the collective bargaining agreement is the basis for the plaintiff's claim, but whether it provides a colorable, non-frivolous defense to the contested action.  See Consol. Rail Corp., 491 U.S. at 307 ("Where an employer asserts a contractual right to take the contested action, the ensuing dispute is minor if the action is arguably justified by the terms of the parties' collective-bargaining agreement. Where, in contrast, the employer's claims are frivolous or obviously insubstantial, the dispute is major.").  If it does, then the dispute is suited for resolution by arbitrators, who are experts at the special skill of interpreting collective bargaining agreements.  If it does not, then arbitration serves no purpose, and dispute resolution is best handled by a court.

Consistent with Consolidated Rail, Hawaiian Airlines merely reiterates that the crucial inquiry is whether the dispute "may be conclusively resolved by interpreting the existing [collective bargaining agreement]."  512 U.S. at 265 (quoting Consol. Rail Corp., 491 U.S. at 305).  If the dispute involves interpretation of the agreement, the dispute is minor; if it does not, the dispute is major.  Id.  Thus, the Hawaiian Airlines Court noted that under Consolidated Rail, a carrier's attempt to unilaterally add a term to an existing collective bargaining agreement would constitute a major dispute.  Id. (citing Consol. Rail Corp., 491 U.S. at 303).

This case presents the materially indistinguishable situation wherein the carrier attempts to unilaterally delete an express provision of a collective bargaining agreement.  In both cases, the carrier has unilaterally modified the terms of the contract.  No interpretation of the agreement is required in either situation, because the carrier cannot advance a non-frivolous argument that the agreement permits the contested modification.  See Consol. Rail Corp., 491 U.S. at 307.  Instead, the carrier has attempted to create or eliminate provisions in the collective bargaining agreement without resorting to the bargaining process required by the Railway Labor Act.  Unilateral modifications to the agreement thus constitute "major disputes" because (1) no contractual interpretation is necessary to resolve them, and (2) classifying them as minor would impermissibly "undercut the prohibitions of § 2, Seventh, and § 6 of the Act against unilateral imposition of new contractual terms."  Id. at 306 (internal quotation marks and citations omitted).

This logic is in no way at odds with the observation in Hawaiian Airlines that minor disputes "[do] not involve rights that exist independent of the [collective bargaining agreement]."  512 U.S. at 265.  When the offending party unilaterally modifies the terms of the collective bargaining agreement, it implicates its independent duty "to exert every reasonable effort to make and maintain agreements" under § 2 First of the Act, 45 U.S.C. § 152 First (2005), and "the prohibitions of § 2, Seventh, and § 6 of the Act against unilateral imposition of new contractual terms."  Consol. Rail Corp., 491 U.S. at 306 (internal quotation marks and citations omitted).  Therefore, a major dispute may still arise even though the plaintiff has asserted a legal right under the collective bargaining

20

But there is nothing to interpret in this case.  Both CSX and BMWE agree that the agreement requires CSX to produce quarterly reports.  Accordingly, I do not believe that Congress intended for arbitrators to handle such disputes.  Frankly, I do not even see what role an arbitrator can play in this scenario.  Because both parties agree that the agreement requires CSX to produce the reports, the arbitral panel's only job will be to issue a decision commanding CSX to comply, a decision that BMWE will have to take <u>back</u> to federal court to enforce.  We can more easily settle this dispute now, by entering a declaratory judgment requiring CSX to produce the quarterly reports, without engaging in contractual interpretation of any sort.

Finally, I note that a carrier's bad-faith refusal to comply with an undisputed provision in a collective bargaining agreement "present[s] the large issues about which strikes ordinarily arise with the consequent interruptions of traffic the Act sought to avoid," and thus is appropriately categorized as a major dispute.  <u>Burley</u>, 325 U.S. at 723-24.  Far from quibbling over what a particular provision means, CSX flatly refused to abide by an agreement that forms the cornerstone of its relationship with its employees.  <u>See</u> <u>Warrior & Gulf Navigation Co.</u>, 363 U.S. at

---

agreement, if the defendant either does not assert a contractual right to take the contested action, or asserts a contractual right that is "frivolous or obviously insubstantial." <u>See</u> <u>id.</u> at 307.

579 ("The collective agreement covers the whole employment relationship.").

That sort of unilateral action risks "undermin[ing] the confidence so indispensable to adjustment by negotiation, which is the vital object of the Act." Burley, 325 U.S. at 756 (Frankfurter, J., dissenting); cf. Air Line Pilots Ass'n, Int'l, 874 F.2d at 444 ("[I]f one party to a labor agreement refuses to bargain with the other, this is an ominous sign that a strike is looming.").

For the above reasons, I respectfully dissent from the majority's determination that BMWE's claim as to the quarterly reports constitutes a minor dispute.