**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Plaintiff,**

v.

**AMERIJET INTERNATIONAL, INC., Defendant.**

**Case No. 10–60272–CIV.**

United States District Court, S.D. Florida, Miami Division.

Nov. 16, 2010.

Howard S. Susskind, Noah Scott Warman, Sugarman & Susskind PA, Coral Gables, FL, Joshua D. McInerney, Barkan Neff Handelman Meizlish, LLP, Columbus, OH, for Plaintiff.

James Clark Polkinghorn, Fisher & Phillips, Fort Lauderdale, FL, Brian M. Herman, E. Scott Smith, James M. Walters, Fisher & Phillips LLP, Atlanta, GA, for Defendant.

### ORDER GRANTING SUMMARY JUDGMENT

FEDERICO A. MORENO, Chief Judge.

THIS CAUSE came before this Court upon Defendant's Motion for Summary Judgment (**D.E. No. 23**) and Plaintiff's Motion for Partial Summary Judgment (**D.E. No. 24**).

Defendant Amerijet International, Inc. ("Amerijet") filed a motion for summary judgment as to Counts I through V of the Complaint. In response, Plaintiff International Brotherhood of Teamsters ("IBT") denies that summary judgment is proper as to Counts I through IV and filed a cross-motion for partial summary judg-

ment seeking to enforce the arbitration awards at issue in Count V.

This Court finds that it lacks subject matter jurisdiction over Counts I and III and that Counts II and IV are preempted by the Railroad Labor Act ("RLA"), 45 U.S.C. § 151, *et seq.* (1986). It also finds that the arbitrator's awards in Count V are unenforceable. Therefore, this Court grants Amerijet's motion for summary judgment and denies the IBT's motion for partial summary judgment.

## I. FACTUAL BACKGROUND

The IBT is a labor organization that represents separate bargaining units of Amerijet's pilots and flight engineers (together "employees"). Amerijet is a common air carrier that is subject to the duties of the RLA.

On August 27, 2009, after four years of bargaining without reaching an agreement, the IBT initiated a strike against Amerijet. On September 8, 2009, the IBT and Amerijet reached two collective bargaining agreements ("CBA(s)") covering pilots and flight engineers, respectively. On September 8, 2009, the parties also signed a Letter of Agreement that prevents Amerijet from retaliating against the employees for their involvement in the strike. The strike ended on September 13, 2009 when pilots and flight engineers ratified their corresponding CBAs. The CBAs became effective on October 1, 2009.

In accordance with Section 204 of the RLA, 45 U.S.C. § 184, the CBAs established the "Amerijet Pilot's System Board of Adjustment" and the "Amerijet PFE's System Board of Adjustment" (together "System Boards of Adjustment") to arbitrate claims arising under the terms of the agreements. Each board consists of two members, one selected by the IBT and one selected by Amerijet. According to Amerijet, many of the terms of the CBAs were taken verbatim from its Crewmember Handbook ("Handbook"), which controlled the terms and conditions of employment until the CBAs were in place.

Prior to entering into the CBAs, the parties established "Interim Grievance and Arbitration Procedures" that were effective from November 3, 2004 through the CBAs' September 13, 2009 ratification date. These procedures provided a dispute resolution mechanism for pilots and flight engineers who were discharged or suspended for more than five days.

### A. Count I: Termination of Mr. Fallon's Employment—Violation of Section 2, Fourth of the RLA

The IBT claims that Amerijet violated Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth, by terminating Derek Fallon's employment because of strike related activities.

Amerijet hired Mr. Fallon on August 31, 2007 and furloughed him between July 6, 2008 and August 7, 2009. Chief Pilot Ed Cook terminated Mr. Fallon's employment on September 30, 2009 without providing a reason, in accordance with the company's policy as to probationary pilots. The IBT asserts that Amerijet terminated the employment of Mr. Fallon because he actively participated in the strike by walking the picket lines and providing a statement to a reporter. Amerijet explains that Mr. Fallon was fired after Mr. Cook observed behavioral problems including calling other employees "stupid" during training sessions, stating that he would refuse to fly legally-permissible long duty periods, and insulting another Amerijet employee over a bullhorn by calling her a "bubble butt."

The IBT filed a grievance on October 1, 2009 for Mr. Fallon. The IBT claims that Mr. Cook refused to process the grievance because the termination occurred on Sep-

tember 30, 2009, after the Interim Grievance and Arbitration Procedures had expired. The IBT also claims that when it offered to file the grievance under the CBA, Mr. Cook rejected its offer. Amerijet argues that while the grievance was rejected on procedural grounds, the IBT failed to appeal it further by presenting questions of procedural arbitrability to a neutral arbitrator.

### B. Count II: Termination of Mr. Fallon's Employment—Breach of Contract Claim

The IBT alleges that Amerijet breached the terms of the September 8, 2009 Letter of Agreement by terminating Fallon's employment because of his strike-related activities.

### C. Count III: Treatment of IBT Strikers—Violation of Section 2, Fourth of the RLA

The IBT claims that Amerijet violated Section 2, Fourth of the RLA by refusing to pay IBT supporters their guarantee for each day that they made themselves available to fly between September 15, 2009 and October 5, 2009, by denying or generally limiting striking pilots' flying opportunities, and by docking five hours of pay for each day of IBT supporters' participation in the strike.

Amerijet's Handbook required that pilots and flight engineers work twenty-eight day bid periods, during which they had to be available for duty, and receive eight days off, known as rostered days off ("RDOs"). The Handbook also guaranteed sixty hours of work per bid periods. Prior to the strike, employees submitted bids for their RDOs during the September 7, 2009 to October 4, 2009 bid period. The IBT claims that, contrary to the Handbook, Amerijet never contacted employees who were known to be union supporters during the strike to determine availability for work and failed to inform these employees of what RDOs they had been awarded. The IBT also claims that Amerijet acted contrary to the Handbook by denying employees their sixty-hour guarantee and docking five hours of pay for any days missed during the strike. Lastly, the IBT alleges that after the strike, some of the employees who notified Amerijet of their availability to fly were not permitted to work until the next bid period.

In response, Amerijet argues that it did not retaliate against striking employees, but that employees' refusal to fly and voluntary unavailability for large portions of the bid period disqualified them from receiving guaranteed pay under the terms of the Handbook and the CBAs. Amerijet claims that because some pilots chose to strike, their training lapsed so that Amerijet was unable to immediately start scheduling these pilots for work. Amerijet also claims that some pilots, including Luis Roca, Michael Roca, Jon Guy, Francisco Palacios, Humberto Montes, and Dawn Leschinski, were held out of service after the strike so that it could investigate allegations of serious misconduct, such as the dissemination of private information, aircraft sabotage, aircraft abandonment, and verbally and physically threatening activities.

### D. Count IV: Treatment of IBT Strikers—Breach of Contract

The IBT alleges that Amerijet breached the terms of the Letter of Agreement by refusing to pay IBT supporters their guarantee, denying or severely limiting flying opportunities, and docking five hours for each day of participation in the strike.

### E. Count V: Mr. Renshaw's Awards

The IBT alleges that the five decisions by the Amerijet Pilot's System Board of

Adjustment and the Amerijet PFE's System Board of Adjustment were issued in accordance with the applicable CBAs and should be enforced by this Court.

On or about October 5, 2009, the IBT, through its representative, Daisy Gonzalez, began to pursue filing grievances with Chief Pilot Cook, in accordance with the CBAs, for Amerijet's treatment of IBT supporters. These grievances concerned: (1) Amerijet's violation of the CBAs by flying revenue flights with non-Amerijet employees; (2) Amerijet's failure to adhere to scheduling/bidding procedures in the CBAs; (3) Amerijet's failure to post a standing/permanent bid for special qualifications training in violation of the CBAs; (4) Amerijet's deduction of five hours of pay for each day of an employee honored the IBT's strike in violation of the CBAs; and (5) Amerijet's removal of employees' access to the web-based scheduling system known as "Geneva–Crewnet–Ticker." Instead of filing separate grievances, each one covering pilots and flight engineers, respectively, in accordance with the two CBAs in effect, Ms. Gonzalez filed five grievances that covered both pilots and flight engineers concerning foregoing issues.

On October 9, 2009, Mr. Cook sent five separate email responses to Ms. Gonzalez to inform her that she had improperly filed the grievances. Thereafter, on October 19, 2009, Ms. Gonzalez filed two new sets of grievances. She also notified Mr. Cook that if she did not receive a response from him by October 23 for each of the grievances, she would assume that he had denied them. Because the CBAs require that the Chief Pilot render a decision within fourteen calendar days, Ms. Gonzalez chose October 23 after calculating fourteen days from October 5, the date she initially improperly filed the grievances, and including a few extra days. When Mr. Cook did not respond by October 23, Ms. Gonzalez informed him that she had processed the grievances to the applicable System Board of Adjustment and that the IBT was appointing David Renshaw as the union member of both boards.

On October 31, 2009, Mr. Cook affirmatively denied the grievances. Soon after, Ms. Gonzalez informed Mr. Cook that his denial was late and she re-asserted her right to advance the matter to the System Boards of Adjustment. In response, Mr. Cook maintained that he had property denied the grievances within the fourteen day period, because it was not until October 19 that Ms. Gonzalez had correctly filed the two sets of grievances, in accordance with the CBAs. Thereafter, Mr. Cook informed Ms. Gonzalez that it was Amerijet's position that it was inappropriate to advance the grievances to the System Boards of Adjustment, because, since he had timely denied the grievances, the union was obligated to go through the proper grievance appeal procedure.[1]

As a result, Amerijet refused to appoint a member to either System Board of Adjustment. The System Boards of Adjustment convened with one member, union representative David Renshaw, and Ms. Gonzalez presented the IBTs case on each of the ten grievances to him. Unsurprisingly, Mr. Renshaw issued ten decisions in favor of the IBT.

## II. DISCUSSION

### A. Standard for Summary Judgment

Summary judgment is authorized where there is no genuine issue of material fact.

---

1. See Section II.B.2. and II.D., *infra*, for summary of the CBAs' grievance procedures and System Boards of Adjustment scheme.

Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party opposing the motion for summary judgment may not simply rest upon mere allegations or denials of the pleadings; the non-moving party must establish the essential elements of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must present more than a scintilla of evidence in support of the nonmovant's position. A jury must be able reasonably to find for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**B. Counts I and III of the Complaint**

Amerijet moves for summary judgment as to Counts I and III because it claims that they constitute "minor disputes" under the RLA and that there exist grievance procedures to resolve this dispute in a non-judicial forum. Furthermore, Amerijet argues that the IBT has failed to show that the company acted with anti-union animus.

 The IBT bases its claims in Counts I and III on Section 2, Fourth of the RLA, "which prohibits employers from denying or interfering with their employees' right to organize or join the union of their choice." *Pita v. Fla. E. Coast Inspections,* No. 94–1459, 1997 WL 715454, at *1 (S.D.Fla. Sept. 18, 1997). According to the Supreme Court, "this section primarily addresses the precertification rights of employees attempting to organize a union for the first time." *Id.* (citing *Trans World*

*Airlines, Inc. v. Ind. Fed'n of Flight Attendants* ("*TWA v. IFFA*"), 489 U.S. 426, 440, 109 S.Ct. 1225, 103 L.Ed.2d 456 (1989)). Therefore, in a post-certification scenario involving a minor dispute, as in this case, judicial intervention is limited to instances where there would be no forum or remedy available but for in federal court or where the employer's conduct has been motivated by antiunion animus. *See TWA v. IFFA,* 489 U.S. at 441, 109 S.Ct. 1225; *see also Pita,* 1997 WL 715454, at *1.

Because the circumstances considered by federal courts in allowing post-certification judicial intervention are missing, this Court grants Defendant's motion for summary judgment.

**1. Counts I and III consist of minor disputes.**

 According to the Supreme Court in *Consolidated Rail Corp. v. Railway Labor Executive Ass'n* ("*Conrail*"), minor disputes are those "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 491 U.S. 299, 303, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). This category "contemplates the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one." *Elgin, J. & E. Ry. Co. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The Eleventh Circuit has stated that in deciding whether to categorize a dispute as a minor one, courts should consider whether the contested action is " 'arguably justified' by the parties' agreement before the minor dispute rule can apply." *Bhd. of Maint. of Way Em. v. CSX Transp., Inc.,* 143 Fed.Appx. 155, 160 (11th Cir.2005) (citing *Conrail,* 491 U.S. at 307, 109 S.Ct. 2477). The threshold for " 'arguability' is low" and if "reasonable

doubt exists as to whether the dispute is major or minor, [a court] will deem it to be minor." *CSX Transp.*, 143 Fed.Appx. at 160. In a post-certification setting, the RLA provides exclusive jurisdiction to boards of adjustment established under the Act over minor disputes. *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, Inc.*, 673 F.2d 700, 704 (3d Cir.1982).

■ By contrast, the major dispute category "relates to the formation of collective agreements or efforts to secure them" and arises "where there is no such agreement or where it is sought to change the terms of one, and therefore the issue is not whether an existing agreement controls the controversy." *Burley*, 325 U.S. at 723, 65 S.Ct. 1282. The RLA provides jurisdiction to the district court over major disputes. The IBT does not contend and this Court does not find that this case involves a dispute over the formation of a collective bargaining agreement or efforts to secure one; therefore, it does not involve a major dispute.

■ In this case, Amerijet claims that Count I, alleging that Amerijet violated Section 2, Fourth when it terminated Mr. Fallon's employment, and Count III, alleging that Amerijet violated Section 2, Fourth in its treatment of striking employees, are minor disputes, the resolution of which depends on how to give effect to the CBAs. *See Hawaiian Airlines v. Norris*, 512 U.S. 246, 254, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (" 'grievances,' like disputes over 'the interpretation or application' of [collective bargaining agreements], refers to disagreements over how to give effect to the bargained-for agreement"). This Court agrees. In its briefs, Amerijet asserts several reasons why this Court does not have jurisdiction over Counts I and III of the IBT's Complaint.

Amerijet argues that both Counts I and III involve the interpretation and application of the CBAs. First, Amerijet claims that when it terminated Fallon's employment prior to the conclusion of his one-year probationary period, it exercised a right that had been codified in the ratified CBAs to terminate for any reason the employment of a crewmember who it believed had not satisfactorily met Amerijet's standards during probation. Section 4.A. in both of the CBAs states, "Amerijet reserves all of the rights, privileges and prerogatives which it had or possessed prior to the execution of this Agreement [unless such rights are expressly abridged by the Agreement]." Section 4.B. of the pilot CBA provides the company with management rights including the rights to "discipline and discharge for cause . . . establish[ ] and enforce[ ] . . . standards for the quality and quantity of work required to be performed by Pilots; . . . [and] make, amend, and enforce reasonable work and safety rules and regulations." Second, Amerijet claims that it treated the striking employees according to the agreed terms in Section 5 of the CBAs.

Amerijet further argues that Supreme Court and RLA precedent do not recognize the distinction made by the IBT that Counts I and III are statutory disputes under Section 2, Fourth of the RLA because they arose prior to the October 1, 2009 effective date of the CBAs. According to Amerijet, the IBT should be judicially estopped from asserting this argument, considering that in Count V it asks this Court to enforce awards issued by the System Boards of Adjustment in favor of the IBT for violations of the CBAs that occurred prior to their effective date.

This Court finds that Amerijet has satisfied the low threshold for arguability set forth by the Supreme Court in *Conrail*. The CBAs "arguably" justify Amerijet's

termination of Fallon's employment and treatment of the striking employees, since the parties had already ratified the agreements at the time in question and the agreements codified Amerijet's preexisting policy in regard to termination of employees and to the calculation of pay guarantees. This Court believes that Counts I and III involve minor disputes and fall under the exclusive jurisdiction of the applicable System Board of Adjustment; however, its analysis does not end here.

### 2. The CBAs provide a forum available to the IBT to address its grievances.

In post-certification cases, judicial intervention in RLA procedures is permitted where "but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress has written into the Railway Labor Act." *TWA v. IFFA,* 489 U.S. at 441, 109 S.Ct. 1225 (internal citations omitted). This is not such a case.

■ This Court disagrees with the IBT's assertion that no forum exists to resolve or remedy any disputes that arose before the October 1, 2009 effective date of the CBAs. The language of the CBAs is broad enough to permit the disputes that arose before their effective date to be resolved via the grievance procedure and System Boards of Adjustment set forth in the agreements. Section 24 of the CBAs provides that a pilot or flight engineer "is encouraged to resolve *any matter or event adversely affecting him,* including any disciplinary action and any Company action or decision that he believes is in violation of the Agreement through an informal discussion ... with the Chief Pilot." (emphasis added). It further provides that any matter that is not resolved through informal discussion can be resolved through a multi-step grievance process that includes the ability to appeal the Chief Pilot's deci-

sion to the Director of Operations. Thereafter, the grievant may appeal the Director of Operation's decision to the Vice President of Human Resources.

Under Sections 24 and 25 of the CBAs, if settlement during the initial phase of the grievance process does not occur, then the IBT may forward its appeal in writing to the applicable System Board of Adjustment or, upon agreement, to a neutral arbitrator. Pursuant to Section 25.C., the Board and/or arbitrator has jurisdiction over:

> *[A]ny dispute which arises out of a grievance* concerning either: (1) discipline (including disqualification or discharge) of the grievant(s), or (2) an alleged breach of the terms of this Agreement, including an interpretation or application of any of the terms of this Agreement, as it affects the grievant(s) (which may include the Company or Union).

(emphasis added).

This Court finds that the CBAs' grievance procedures and System Boards of Adjustment scheme are available to resolve this dispute. Section 25 does not exclude disputes arising prior to the October 1, 2009 effective date. Its broad language ("any dispute which arises out of a grievance") authorizes the System Board of Adjustment and/or neutral arbitrator to consider the IBT's claims, because Count I concerns a disciplinary action resulting in discharge and Count III also concerns disciplinary actions and involves the interpretation of the CBAs. *Cf. AT & T Tech., Inc. v. Comm. Workers of Am.,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) ("[T]here is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers

**1252**

the asserted dispute" (internal citations omitted)).

This Court also finds that the non-judicial dispute resolution forum provided in the CBAs is not ineffective such that this Court should intervene in what it has already classified as minor disputes.[2] The CBAs provide clear grievance procedures that contain a multi-step appellate system, which culminates in a determination by a System Board of Adjustment or neutral arbitrator. If the parties decide to proceed to a System Board of Adjustment, any decision reached by the Board is reviewable by a neutral arbitrator. In so far as the parties' inability to reach a resolution results from procedural questions that stem from the disputes, these "are presumptively not for the judge, but for an arbitrator to decide." *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

### 3. The IBT has failed to show that Amerijet acted with anti-union animus.

In post-certification cases, judicial intervention is further permitted if anti-union animus motivated an employer's actions. Judicial intervention requires evidence, not merely conclusory statements. *See Bhd. of Locomotive Eng'rs v. Kan. City S. Ry. Co.,* 26 F.3d 787, 795 (8th Cir.1994). Federal courts have found that judicial intervention is allowed when an employer has engaged in "a fundamental attack on the collective bargaining process" or a "direct attempt to destroy a union." *Nat'l R.R. Passenger Corp. v. Int'l Ass'n of Machinists & Aerospace Workers,* 915 F.2d 43, 52 (1st Cir.1990) (quoting *Int'l Ass'n of Machinists & Aerospace Workers, AFL–CIO v. Alaska Airlines, Inc.,* 813 F.2d 1038, 1040 (9th

Cir.1987)). In this case, the IBT has not provided any direct evidence sufficient to meet the level of anti-union animus required for judicial intervention. *See Local Union No. 2000, Int'l Bhd. of Teamsters, AFL–CIO v. Northwest Airlines, Inc.,* 21 F.Supp.2d 751, 756 (E.D.Mich. 1998) ("the level of anti-union animus required to justify federal court intervention in post-certification disputes is substantial"). To intervene, federal courts have required evidence that the employer "engaged in a systematic, predetermined and improper campaign to undermine the Union." *Id.; see also Ry. Labor Exec. Ass'n v. Boston & Maine Corp.,* 808 F.2d 150 (1st Cir.1986) (where the court intervened when the employer agreed to allow striking employees to return to work in their pre-strike positions, but subsequently issued job abolishment notices to all striking employees, characterizing this action as a "predetermined, improper design to reduce workforce by eliminating strikers as employees"). This Court finds that such circumstances are not present in this case.

In Count I, the IBT claims that Mr. Fallon was terminated for supporting the IBT during the strike. To support this contention, the IBT submitted Mr. Fallon's sworn Declaration, claiming (1) that he had a perfect record for his entire tenure with Amerijet, (2) that it was only after the strike that Amerijet had issues with him, and (3) that the comments regarding being unwilling to fly over 16 hours, not caring about customers, etc., are pure fabrications. The IBT argues that these fabricated stories support the inference that Amerijet was motivated by antiunion animus in the termination.

**2.** This Court notes that in August 2010 the parties availed themselves of the dispute resolution procedures provided in the CBAs to resolve a grievance arising during the time period prior to the effective date of the CBAs.

In Count III, the IBT claims that Amerijet's treatment of several pilots and flight engineers, who participated in the strike, was in contravention of the Handbook and motivated by anti-union animus. The IBT claims that Amerijet discriminated against striking employees by failing to make contact with the employees during the strike to determine availability, by failing to pay IBT supporters their guarantee, and by holding employees out of service after the strike ended. The IBT asks this Court to draw an inference from the timing of the alleged discriminatory acts that they were motivated by anti-union animus toward IBT supporters.

Because "post certification cases finding jurisdiction under Section 2 ... Fourth require a stronger showing of anti-union animus than [these] inferences provide[ ]," this Court finds that it does not have subject-matter jurisdiction over Counts I and III. *See Nat'l R.R. Passenger Corp.*, 915 F.2d at 52 (where the court refused to intervene based on the inference that animus was reflected by the employer's disciplinary investigations of three union representatives for merely discussing with management the propriety of an employee's drug testing). Furthermore, as in *National R.R. Passenger Corp.*, the Supreme Court's pronouncement in *TWA v. IFFA* that "the post-certification rights of unions under Section 2 ... Fourth are narrowly conscribed" counsels this Court against judicial intervention in this case. 915 F.2d at 52.

## C. Counts II and IV

■ The IBT does not oppose summary judgment as to Counts II and IV of its Complaint. In any case, this Court finds that the RLA preempts the IBT's breach of contract claims contained therein, and summary judgment is warranted. As already discussed, the RLA provides a framework "for resolution of disputes between air carriers and their employees that 'grow[ ] out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions.' " *Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1049 (11th Cir. 1996) (citing 45 U.S.C. § 184). Minor disputes are to "be resolved through grievance procedures of the RLA rather than in federal court." *Pyles*, 79 F.3d at 1050. Therefore, "it has long been the rule that when the resolution of a state-law claim, such as the breach of contract claim here, requires an interpretation of the CBA, the claim is preempted and must be submitted to arbitration before a system board of adjustment." *Id.*

In Counts II and IV, the IBT claims that Amerijet breached the parties' Letter of Agreement, entered into upon tentatively reaching the CBAs. The Letter of Agreement provides that Amerijet "will not discriminate or take any otherwise adverse action against [any of the striking employees] on account of their participation in the labor dispute." This Court agrees with Amerijet that to determine whether Amerijet took "adverse action[s]" against the IBT strikers requires interpreting the applicable CBAs and its predecessor policies, codified therein. Here, as in *Pyles*, where the Eleventh Circuit found RLA preemption, this Court will have to "interpret other provisions of the CBA[s] in order to interpret properly the [L]etter of [A]greement." 79 F.3d at 1050. Furthermore, this Court has already determined that grievance procedures exist in accordance with the RLA to provide an effective non-judicial dispute resolution forum.[3] Therefore, this Court finds that

---

**3.** Similar to the Plaintiff in *Pyles*, the facts do not suggest that the IBT has exhausted ad-

Count II and IV are preempted by the RLA, and grants Amerijet summary judgment as to these counts.

### D. Count V

■ Amerijet moved for summary judgment as to Count V, arguing that this Court does not have jurisdiction to enforce the ten awards issued by Mr. Renshaw and that, even if it did, the awards should not be enforced under the RLA. The IBT cross-moved for partial summary judgment as to this count, claiming that Mr. Renshaw's awards are final and binding and that they should be enforced by this Court.

■ This Court has jurisdiction to enforce the awards. In *International Ass'n of Machinists, AFL–CIO v. Central Airlines, Inc.*, the Supreme Court found that federal courts have jurisdiction in a suit to review and enforce the award of an airlines system board of adjustment under the laws of the United States and the laws regulating commerce. 372 U.S. 682, 684–85, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). Judicial review, however, is "among the narrowest known to the law." *Int'l Ass'n of Machinists & Aerospace Workers v. Venezolana Internacional de Aviacion, S.A.*, 678 F.Supp. 264, 266 (S.D.Fla.1988). According to the Supreme Court, "under well established standards for review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would be the better one." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am.*, 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). A federal court, however, may decide to vacate or remand an award if (1) the System Board of Adjustment failed to comply with the requirements of the RLA, (2) the award fails to conform, or confine itself, to matters within the scope of the System Board of Adjustment's jurisdiction, or (3) a member of the System Board of Adjustment engaged in fraud or corruption in making the award. *Parsons v. Cont'l Airlines, Inc.*, 215 Fed.Appx. 799, 801 (11th Cir.2007). More generally, an award may not be enforced "when the parties include an arbitration clause in their collective bargaining agreement ... [and] the arbitral decision does not 'draw its essence from the collective bargaining agreement.'" *W.R. Grace & Co.*, 461 U.S. at 764, 103 S.Ct. 2177 (quoting *Steelworkers v. Enterp. Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

■ In this case, the arbitration is governed by the RLA as well as by the CBAs. *See Ass'n of Flight Attendants, AFL–CIO v. Aloha Airlines, Inc.* ("*Aloha*"), 158 F.Supp.2d 1200, 1205 (D.Haw.2001). In *International Ass'n of Machinists v. Central Airlines, Inc.*, the Supreme Court directed,

> [T]he provisions of a § 204 contract, such as *those governing the composition of the adjustment board* ... or for breaking deadlocks, or the finality to be accorded board awards, are to be judged against the [RLA] and its purposes and enforcement or invalidated in a fashion consistent with the statutory scheme.

372 U.S. at 694, 83 S.Ct. 956 (emphasis added). Pursuant to the RLA, "disputes between air carriers ... and their employees must be submitted to the Board of Adjustment." *Id.* (citing 45 U.S.C. § 184). The RLA further provides that "[a] majority vote of all members of the division of

---

ministrative remedies in regard to its grievances, concerning the treatment of striking employees and the termination of Mr. Fallon's

employment, by engaging the multi-step appellate system provided in the CBAs.

the Adjustment Board eligible to vote shall be competent to make an award with respect to any dispute submitted to it." 45 U.S.C. § 153, First (n).[4]

As already discussed, Sections 24 and 25 in both CBAs provide multi-step grievance procedures and create System Boards of Adjustment to resolve disputes in the event no settlement occurs at an earlier step. To initialize the grievance process the pilot or flight engineer may file a grievance. Section 24.A. in both CBAs provides that "[t]he Chief Pilot shall evaluate and render [a] decision as soon as possible, but no later than fourteen (14) calendar days after receipt of the grievance, or after the [initial] meeting, if one was requested." The parties disagree as to whether Mr. Cook timely denied the grievances. The IBT asserts that, because Mr. Cook failed to answer within fourteen days of when it initially filed its grievances, such failure "constitute[d][a] denial of the grievance[s]" warranting advancement to the System Boards of Adjustment. This Court finds that even if the IBT properly proceeded to the System Boards of Adjustment, because the System Boards of Adjustment failed to comply with the requirements of the RLA and the CBAs, the awards do not "draw their essence" from the CBAs and may not be enforced.

The CBAs clearly require that the Boards consist of two representatives, one from the union and one from the company. Section 25.B. of the CBAs provides that *"each Board shall be composed of two (2) members;* one selected by the Company and one selected by the Union." (emphasis added). Section 25.C. explains that "[e]very grievance ... shall be heard first by a

*two-person* Board, unless the Company and the Union agree to have the dispute heard directly by the neutral arbitrator, alone." (emphasis added). The CBAs also clearly require that two-person Boards issue decisions by majority vote. Section 25.D.1. states that "[a] majority vote of the Board shall be competent to make a finding or decision with respect to any dispute submitted to it in accordance with the agreement" and that "such [a] finding shall be final and binding." Section 25.D.2. continues that "[i]f a *two-member* Board is unable to agree upon a finding or a decision ... the Union may appeal the grievance to Arbitration." (emphasis added). Therefore, only upon agreement of the parties or in an appeal from an award of a System Board of Adjustment may a sole arbitrator issue a decision that is final and binding; otherwise, the CBAs require that multiple arbitrators render a majority vote.

Courts have consistently underscored the importance of majority voting when determining whether to enforce the award of a system board of adjustment. For example, in *Aloha,* the court found that "where there are multiple arbitrators, a majority are required to render a valid decision." 158 F.Supp.2d at 1205 (citing 45 U.S.C § 153; *Jones v. St. Louis–San Francisco Ry. Co.,* 728 F.2d 257 (6th Cir. 1984)). In *Aloha,* the CBA, similar to the CBAs in this case, provided that the decision of the system board of adjustment would be final and binding if rendered by a majority of arbitrators.[5] While a majority of arbitrators remained on the case, the arbitrator unilaterally issued his own opinion and the union objected. The Court

---

4. While the Eleventh Circuit has not expressly applied 45 U.S.C. § 153, First (n) to airlines, in *Steward v. Mann,* 351 F.3d 1338, 1344–45 (11th Cir.2003), it relied on *International Ass'n of Machinists v. Central Airlines, Inc.,* 372 U.S. at 694, 83 S.Ct. 956, to find that the

notice provision of the RLA Section 3, First (j) applies to airlines.

5. In *Aloha,* the CBA provided that the System Board of Adjustment consists of four board members, two from the company and two

found that, absent an agreement to modify the CBA, such a unilateral decision "cannot be said to 'draw its essence' from the CBA." In *Jones*, the Sixth Circuit found that a majority of the board did not issue a decision because the arbitrators failed to abide by minimal procedural requirements of the RLA, namely 45 U.S.C. First (j) and (n), which together "entitle the parties who appear before the Board the right to be heard by a three member Board, a majority of whom must then agree in order to resolve the dispute at hand." 728 F.2d at 260. The court held that the board did not issue a majority decision consistent with the RLA, since the company board member, who concurred with the arbitrator's decision, was neither present at the hearing nor had the opportunity to become familiar with the record of the proceedings. *Id.* at 264.

The System Boards of Adjustment are bound by the CBAs' express majority vote provisions because "the jurisdiction of the arbitration boards is limited to that which is conferred upon them by the arbitration agreement[s]," *Edwards v. UPS*, 99 Fed. Appx. 658, 660 (6th Cir.2004) (citing *Edwards v. UPS*, 16 Fed.Appx. 333 (6th Cir. 2001)). This Court finds that Mr. Renshaw's awards violated the CBAs' majority requirements because they were issued absent properly constituted System Boards of Adjustment and absent majority votes, as required by the RLA. As a result, it cannot be said that these awards "draw their essences" from the CBAs, and the System Boards of Adjustment, composed of only a union representative, were without jurisdiction to render the decisions. This Court will not enforce Mr. Renshaw's awards. For the stated reasons, Amerijet's motion for summary judgment as to

Count V is granted and the IBT's motion for summary judgment is denied. Therefore, this matter requires re-arbitration in accordance with the CBAs.

## III. CONCLUSION

This Court finds that it does not have subject matter jurisdiction over Counts I and III and that Counts II and IV are preempted by the RLA. Furthermore, this Court finds that the arbitration awards at issue in Count V are unenforceable. Therefore, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment is GRANTED. Thus, Plaintiffs Motion for Partial Summary Judgment is DENIED. It is further

**ADJUDGED** that the Clerk of Court shall mark this case as CLOSED and DENY all pending motions as moot.

---

from the union. If deadlock resulted, the parties could appoint a neutral arbitrator. Alternatively, the parties could bypass this system and proceed to arbitration before a panel of three, consisting of a union representative, a company representative, and a neutral arbitrator, as the parties decided to do.